[Civil No. 3348.  Filed November 22, 1933.]

[26 Pac. (2d) 1017.]

TERESA PIERCE, Widow of MORRIS PIERCE, Deceased, FRED MALLORY PIERCE, BEATRICE PIERCE, ALICE PIERCE, IRENE PIERCE, Children of Said Deceased, MORRIS PIERCE, Petitioners, v. PHELPS DODGE CORPORATION, Defendant, Employer; THE INDUSTRIAL COMMISSION OF ARIZONA, Defendant Insurance Carrier.

Mr. John J. McCullough, for Petitioners.

Mr. Don C. Babbitt and Mr. Emil Wachtel, for Defendant Insurance Carrier.

LOCKWOOD, J.—This case comes before us on a writ of *certiorari* granted to Teresa Pierce, for herself as widow, and also as representative of four minor children, reviewing an award of the Industrial Commission of Arizona denying compensation for the death of Morris Pierce, her husband, hereinafter called deceased.

There are two questions only for our consideration in the matter: First, what was the cause of the death of Morris Pierce, and, second, was it such as to render the death subject to compensation. The Industrial Commission in making its award found as follows:

"That the evidence is insufficient to establish that said deceased suffered any injury by accident arising out of and in the course of his said employment on or about said date, and the evidence is further insufficient to establish that said death was proxi-

mately the result of injury by accident arising out of and in the course of his employment.''

We, of course, give to the findings of fact, actual or presumptive of the Industrial Commission the same credit which we do to the verdict of a jury or the findings of a trial court. *Blankenship* v. *Industrial Commission,* 34 Ariz. 2, 267 Pac. 203; *Federal Mutual Liability Ins. Co.* v. *Industrial Commission,* 31 Ariz. 224, 252 Pac. 512. This, however, does not apply to conclusions of law, and we think that the finding above quoted is rather a conclusion of law than a finding of fact. It does not state the cause of the death of Morris Pierce, or even that it is impossible to ascertain what the cause was. It merely says that as a matter of law the evidence is insufficient to establish that the death was a result of injury by accident arising out of and in the course of employment. We are therefore in the position in which we frequently find ourselves, of having before us a judgment with no formal findings of fact made by the court, from which we can determine whether such findings support the judgment. In this case it is our rule that if from the evidence findings could be made which reasonably support the judgment we will assume that such were the actual findings of the trial court. *Blackford* v. *Neaves,* 23 Ariz. 501, 205 Pac. 587; *Thomas* v. *Newcomb,* 26 Ariz. 47, 221 Pac. 226. And we think the same rule should apply to an award of the Industrial Commission.

We turn, therefore, to the evidence. The undisputed facts show that deceased at the time of his death was about the age of thirty-five years, and had been for a number of years employed as a miner by the Phelps Dodge Corporation. There is also evidence that for some time he had been suffering from myocarditis, and had been so informed by a physician. His usual work required him as a shift

boss to do a great deal of walking through the various underground passages of the mine, and to climb up and down many ladders. He performed this work in the ordinary manner during all of the morning of the 25th of February, 1930, without showing any bad effects or making any complaint. When the noon hour arrived he sat down to eat his lunch and had just finished the meal when he arose from a sitting or reclining position, walked a few hundred feet, and suddenly collapsed, and died a few moments thereafter. There is no evidence that during this walk he sustained any accident or that anything untoward happened which contributed to his death, except in so far as the mere walking itself may have done so. There was a post-mortem examination, not amounting to an autopsy, made shortly after the death, and the three doctors who made it certified that in their opinion, " . . . deceased died from natural causes and our diagnosis is that death was caused by acute dilatation of the heart as the result of myocardial changes."

At the hearing before the Industrial Commission three physicians testified, Dr. H. J. French, who was one of the doctors signing the death certificate, and Drs: Z. Causey and Robert Ferguson, who testified merely as expert medical witnesses, and their evidence is all that we have as to the cause of death. They all agree that from the facts appearing in evidence it must have been myocarditis, a disease of the muscles of the heart, and, indeed, this is not disputed but admitted by petitioner. It is her contention, however, that this disease was aggravated by the work necessarily performed by deceased, and his death accelerated by reason of such work. In determining whether this be true, we necessarily must review the testimony of the physicians.

Doctor French testified in substance that there are two kinds of myocarditis, one the acute form where

a man may be in apparent perfect health and suddenly succumb to an acute dilatation of the heart due to muscular changes, and the other gradual, wherein the patient slowly becomes worse and finally dies regardless of whether he indulges in muscular exertion or not. He also testified that deceased did not die of the second kind but of the first, or acute dilatation. Asked in regard to the effect of violent muscular exertion, such as that admittedly and necessarily performed by deceased in the usual course of his duties, or other causes in accelerating the progress of an acute dilatation, he said, in substance, that anything which increased the action of the heart would aggravate the condition and accelerate death whether it were muscular exertion, excitement or emotion, or anything else, but that in his opinion the work which deceased performed did not have much bearing on his sudden death, though it might have had some.

Doctor Causey did not know personally of the cause of death of deceased, but answered in regard to hypothetical questions, which stated fairly the facts in regard to deceased's physical condition on the morning of his death, and the work which he did, that such work in his opinion accelerated and aggravated his heart condition and brought about his death sooner than he would have died if he had not performed the work.

Doctor Robert Ferguson also testified that the eating of a meal would accelerate heart action, and that the climbing of a ladder, such as it is admitted deceased climbed during the morning, would be very bad for a man with advanced myocarditis, and that such a man should not work underground or do any kind of severe and strenuous work or climbing, and should rest both before and after meals, but did not state specifically whether work of the kind which de-

ceased was performing would accelerate his death; his answer to such a question being: "If he had any heart trouble he shouldn't do any climbing, I should say."

We think that all of this testimony, taken together, leads unmistakably to the conclusion that while the deceased died of acute myocarditis, that his death was accelerated at least to some degree by the ordinary and usual conditions of the work which he was required to and did do, but not by any sudden or extraordinary strain or fortuitous happening.

The question then before us is whether death from a pre-existing heart disease, which is accelerated by the ordinary and usual conditions of the occupation of the employee and not by any sudden, unusual, or unexpected strain or happening, is subject to compensation under our law. Section 1421, Revised Code of 1928, which is the basis for recovery under the Arizona Workmen's Compensation Act, reads, so far as material, as follows:

" . . . Every employee, hereinbefore designated, who is injured, and the dependents of every such employee who is killed, by accident arising out of and in the course of his employment, wheresoever such injury has occurred, unless purposely self-inflicted, shall be entitled to receive, and shall be paid such compensation . . . , as are herein provided."

There is no doubt that deceased in this case was engaged in the course of his employment at the time of his death. The question is whether he was "injured (killed) by accident arising out of . . . his employment."

We come then to the interpretation of the phrase "injured . . . by accident" as used in the Compensation Act, and particularly of the word "accident." In many of the states, such as California, Iowa and others, the word "injury" or "injured" is used alone, and not directly qualified by the word "acci-

dent'' or ''accidental.'' The decisions from those states are therefore useless in aiding us. The decisions from the states with acts like ours are in hopeless conflict as to whether ''accident'' refers solely to the cause of an injury or is synonymous with the injury itself. The word ''injured,'' when used as a participial adjective as it is here, is defined by Webster as ''damaged.'' The word ''accident'' is, by the same authority, ''an event that takes place without one's foresight or expectation; an undesigned, sudden and unexpected event.''

It is obvious that while ''injured'' always implies a result, the word ''accident'' may mean either a cause or a result, and which it is must be determined by the context. The preposition ''by,'' which is found between the word ''injured'' and the word ''accident,'' supplies the answer. Used as it is, it can only mean ''by medium of, in consequence of, or through the agency of,'' and the ''accident'' is, therefore, the cause of the injury. To illustrate, if A says, ''I had an accident; I injured my arm,'' it is natural to presume that by the word ''accident'' he referred to the result to his arm, but if on the contrary he says, ''I injured my arm by accident,'' the ordinary reasonable man would undoubtedly believe that ''accident'' so used referred to the cause of the injury to the arm and not to its condition.

And yet if the cases which attempt to define ''accident'' are carefully read and analyzed, it is apparent that many of them have utterly overlooked the qualifying effect of the preposition and have considered the word ''accident'' as though it stood alone.

The original Workmen's Compensation Law was adopted by the British Parliament in 1897. In 1903 in the case of *Fenton* v. *Thorley,* (1903) A. C. 443, the question arose as to the meaning of the word ''accident'' in the phrase ''injury by accident''; it being

contended on the one hand that it referred to the cause of the injury alone and not to the injury itself, while on the other hand it was urged that it referred to the injury as well as to the cause. The case was carried to the House of Lords, and it was finally held that the word included an unexpected injury regardless of the cause. The opinion is too long to be quoted in full, but a careful reading and analysis thereof will show that the court considered the word "accident" as though standing alone. The following quotation shows that it clearly understood that the word "accident" in some cases is used to signify the cause and in other cases the result.

"The word 'accident' is not a technical legal term with a clearly defined meaning. Speaking generally, but with reference to legal liabilities, an accident means any unintended and unexpected occurrence which produces hurt or loss. But it is often used to denote any unintended and unexpected loss or hurt apart from its cause; and if the cause is not known the loss or hurt itself would certainly be called an accident. The word 'accident' is also often used to denote both the cause and the effect, no attempt being made to discriminate between them. . . . "

But it failed apparently to see that the only possible effect of the use of the words "injured by" in the phrase is to establish that the accident referred to therein is the cause, and not the effect. The injury referred to is obviously a result. If, then, in this connection the word "accident" is also a result, it is tantamount to saying that the phrase means "an injury by injury" or a "result by a result." Notwithstanding our respect for the decisions of so eminent a tribunal and the similarity of the language in the two acts, we cannot believe that our legislature when it adopted our Compensation Act intended to attribute to ordinary words such an absurd meaning. If, on the other hand, the phrase was intended to

mean a result from a certain kind of cause, it is intelligible and has a fixed and definite application. Had our legislature intended that the words "injury" and "accident" both meant a result, it should and doubtless would have joined them by the conjunction "or" rather than the preposition "by."

On an examination of the many English and American cases which attempt to follow the definition of "accident" laid down in *Fenton* v. *Thorley, supra,* it will be seen that few of the judges have considered this point. Most of them have apparently assumed, following the principal case, that because "accident" *may* sometimes imply a result if used alone or in the proper context, that it necessarily *must* do so in the Compensation Act, notwithstanding that its context there is only intelligible on the theory that it refers to a cause and not to a result. But in these very jurisdictions there are many cases where the results reached on the particular facts of the case are illogical or the argument strained if that definition is indeed the right one. It would seem that the court in those cases instinctively realized the definition is not correct, and they have therefore frequently denied compensation which should logically have been granted under the definition, while in other cases where the compensation has been allowed they have spent much time and ingenuity in endeavoring to construe the facts to fit what may be called the Missouri rule, which was not necessary if *Fenton* v. *Thorley, supra,* is correct. The legislatures of the states of Missouri and Nebraska have apparently recognized the true rule where the courts of many jurisdictions have failed to do so, and have in their acts defined the word "accident" as meaning "an unexpected or unforeseen event happening suddenly and violently, with or without human fault and producing at the time objective symptoms of an injury." Section

3305 (b), Rev. Stats. Mo. 1929 (Mo. Stats. Ann., § 3305 (b), p. 8238); chapter 198, Neb. Sess. Laws 1913.

Our Compensation Act was taken principally from Utah, and in the case of *Tintic Milling Co.* v. *Industrial Com.,* 60 Utah 14, 206 Pac. 278, 23 A. L. R. 325, the court quotes approvingly the following definition from Honnold, Workmen's Compensation Laws, volume 1, page 274:

"The word 'accident' refers to the cause of the injury, and it is here used in its ordinary and popular sense, as denoting an unlooked for mishap, or an untoward event, which is not expected or designed by the workman himself, as a physiological injury as a result of the work he is engaged in, an unusual effect of a known cause, a casualty. It implies that there was an external act or occurrence which caused the injury or death. It contemplates an event not within one's foresight and expectation resulting in a mishap causing injury to the employee"

—clearly recognizing that the accident is the event which precedes and causes the injury. It is true that in at least one later case the Supreme Court of Utah has apparently failed to follow the logical conclusions which necessarily flow from its own definition; *Cherdron Const. Co.* v. *Simpkins,* 61 Utah 493, 214 Pac. 593, but it has never, so far as we know, formally repudiated the definition laid down in the Tintic case. We conclude that on reason, notwithstanding there are many authorities to the contrary, in the phrase "injured . . . by accident" as found in our Compensation Act, the word "accident" refers to the cause of the injury and not to the injury itself.

Following this rule, in order that an employee be entitled to compensation there must be a result, an injury or damage, which is caused by "an event that

takes place without one's foresight or expectation; an undesigned, sudden and unexpected event.''

Our statute in section 1420, Revised Code 1928, construes for certain purposes the phrase ''personal injury by accident arising out of, and in the course of the employment,'' and it is specifically stated that it ''does not include a disease unless resulting from the injury.'' It is obvious from this that when compensation is awarded in any manner for a disease there must have been (a) an unexpected event which was (b) the cause of an injury to the person, (c) which injury must have produced or aggravated a disease. Nor can the disease itself be the injury produced by the unexpected event, since the statute specifically says it must be the *result* of the injury.

Applying this rule to the facts of the present case, there is no unexpected event which caused an injury, which injury resulted in a disease or an aggravation thereof. On the contrary, the events which preceded the death of Pierce, and, as urged by claimants, accelerated it, were the usual, ordinary, necessary and expected incidents of his occupation. It is true that the death from the disease was sudden and unexpected, but as we have stated the undesigned, sudden and unexpected event which must exist in order to create the right to compensation must be found in the original cause and not in either of the subsequent results. The true rule was applied by us, though not stated fully, in the case of *Hartford Acc. & Indem. Co.* v. *Industrial Commission,* 38 Ariz. 307, 299 Pac. 1026. In that case there was the sudden and unexpected fall from the scaffold, the accident, which was the proximate cause of a broken heel and pelvis, the injury, which injury resulted in the acceleration and aggravation of a diseased condition of the heart. The three essential elements for an award of compensation for disease thus appearing, the commission

properly granted it. In the present case the first one is lacking, and therefore compensation was correctly refused. The award is affirmed.

ROSS, C. J., and McALISTER, J., concur.