363 P.2d 600

**Travis O. DUNLAP, Petitioner,**

**v.**

**INDUSTRIAL COMMISSION of Arizona, and Edward P. Oldham, Jr. and Link L. Colvin, dba Copper State Construction Company, Respondents.**

No. 7071.

Supreme Court of Arizona.

En Banc.

July 11, 1961.

4

Richard J. Dowdall, Tucson, for petitioner.

Frances M. Long, Phoenix, for respondent, Industrial Commission; Donald J. Morgan, James D. Lester, Edward E. Davis, C. E. Singer, Jr., Phoenix, of counsel.

STRUCKMEYER, Chief Justice.

Travis O. Dunlap, petitioner herein, was employed as a heavy equipment operator by the respondents, E. P. Oldham, Jr. and L.

L. Colvin, doing business as Copper State Construction Company. Early in the month of April, 1959 petitioner was operating a large diesel powered dozer-caterpillar tractor for respondent company. The testimony reveals that an unusual amount of dust and fumes were present in the place of petitioner's employment and that there was a crack in the exhaust pipe of the caterpillar tractor being operated by petitioner. This defect in the exhaust system permitted exhaust fumes to blow back upon petitioner. The cylinder head of the tractor was also cracked allowing water to mix with diesel fuel at a high temperature. This mixture caused petitioner's eyes, nose and throat to burn and become irritated.

During the week of April 6 to April 13, 1959, petitioner became very ill, suffered chills and fever, endured severe vomiting attacks and made repeated complaints to representatives of respondent company. On April 13, 1959, petitioner consulted Dr. James M. Hesser and was hospitalized. Dr. Hesser's report diagnosed petitioner's illness as: "Pneumonia which was brought on by dust and fumes from tractor."

On June 5, 1959 petitioner filed a report of the injury and on June 22, 1959, after a hearing, the Industrial Commission of Arizona entered an award for non-compensable claim. The Commission found that the applicant did not sustain an accident arising out of and in the course of his employment within the meaning of the Workmen's Compensation Act, A.R.S. § 23–901 et seq.

Application for re-hearing was filed and granted. Hearings thereon were held on September 3, 1959 in Tucson and on October 2, 1959 in Phoenix. Thereafter the Commission requested Dr. James R. Moore to review the record and give his medical view. Dr. Moore reported that there was insufficient material in the record, either by physical, x-ray or laboratory examination, to indicate the type of pneumonia or, in fact, if petitioner actually had pneumonia although that diagnosis had been given by the attending physician, Dr. Hesser. Dr. Moore's memorandum was forwarded to Dr. Hesser who then elaborated on his earlier diagnosis. Dr. Moore subsequently reported, in a second memorandum, that there was still insufficient evidence in the file to establish a causal connection between claimant's condition and the condition of his employment.

On February 11, 1960 copies of both memoranda of Dr. Moore and of Dr. Hesser's reports were mailed to petitioner's attorney who was advised that these items would be considered by the Commission in rendering its decision upon re-hearing. On February 25, 1960 the Commission reaffirmed its earlier finding that petitioner's illness did not result from any injury by accident arising out of and in the course of his employment. Petitioner applied to this Court for certiorari.

**6**

The Workmen's Compensation Act is remedial and its terms should be liberally construed in order to effectively carry out the purpose for which it was intended, that being to place the burden of injury and death from industrial causes upon industry. Nicholson v. Industrial Commission, 76 Ariz. 105, 259 P.2d 547. Nonetheless, the Act does not contemplate a general health and accident fund; hence, there must be a causal connection between the employment and the injury. Buick v. Industrial Commission, 82 Ariz. 129, 309 P.2d 257; Strauss v. Industrial Commission, 73 Ariz. 285, 240 P.2d 550. The petitioner in a case of this nature must show (a) that there was an accident arising out of and in the course of employment; (b) that the petitioner was injured thereby, and (c) that the injury or disease was caused by conditions of employment. In re Mitchell, 61 Ariz. 436, 150 P.2d 355 and Davis v. Industrial Commission, 46 Ariz. 169, 49 P.2d 394. The first question to be considered concerns whether there was an accident arising out of and in the course of employment since the statute, A.R.S. § 23–1021, makes the right to compensation dependent upon an "accident arising out of and in the course of his employment".

At an early date a majority of jurisdictions in this country steadfastly held that to constitute an "accident" within the meaning of the usual Workmen's Compensation Act there must have been a sudden, unexpected or violent event resulting in injury. This was the rule in Arizona after Pierce v. Phelps Dodge Corporation, 42 Ariz. 436, 26 P.2d 1017, which held that the word "accident" referred to a sudden and unexpected event which must have occurred to give rise to the right of compensation. However, the case of In re Mitchell, supra, later liberalized this restrictive rule and held that although accidental injury usually involved a sudden happening caused by some violent or external means such as traumatic injury, an industrial accident need not be an instantaneous happening and violence is not a prerequisite of the right to compensation. See also Dauber v. City of Phoenix, 59 Ariz. 489, 130 P.2d 56.

Here, it is asserted the requirement of an accidental occurrence has been met. Petitioner showed that the tractor upon which he worked was defective. Testimony revealed that the cylinder head was cracked, causing diesel fuel and water to mix at an approximate temperature of 1,000 degrees Fahrenheit. This in turn caused the eyes, nose and throat of those persons coming in contact therewith to burn and become irritated. Petitioner testified that there was a crack in the exhaust system which forced him to inhale an unusual amount of exhaust fumes. Testimony of witnesses at the scene indicated that the tractor in question gave off an unusual amount of smoke which was clearly noticeable. We hold therefore that there

was an "accident" which arose out of and in the course of petitioner's employment.

■. It is undisputed that petitioner suffered from pneumonia so that the only remaining question is whether there was a showing of a causal connection between the fact of employment and the fact of injury. It is at this point that the exact medical testimony becomes of paramount importance because of its ostensible disagreement. The initial report of Dr. Hesser diagnosed petitioner's illness as: "Pneumonia, which was brought on by dust and fumes from tractor." X-rays were taken and petitioner was hospitalized. After the second hearing, but prior to the final decision, the Commission requested Dr. James Moore, its medical advisor to review the case. Dr. Moore did not examine the petitioner. His report was based upon the original report by Dr. Hesser. He was of the opinion that, because of lack of detailed information, there was no actual proof showing the petitioner had pneumonia as a result of the incident described. However, Dr. Moore did state that:

"* * * the incident described could conceivably precipitate an upper respiratory irritation which might develop into a pneumonitis or some type of pneumonia as a result of lowered local resistance in the presence of an infectious organism."

Dr. Moore's report was forwarded to Dr. Hesser with a request for further medical information. On January 9, 1960 Dr. Hesser then made the following affirmative diagnosis:

"Pneumonia, Bronchial type with evidence of dust Silicosis and poisoning which apparently caused the Patient to go into shock and general weakness, and also resulted in spasms of hard coughing. This also did precipitate an upper respiratory irratation which resalted in general form of Bronchial Pneumonia. After discharge from the Hospital the Patient returned weekly for further medication and examinations, for approximately three and one half months."

Subsequently, Dr. James Moore was again asked to review the case. He reported as follows:

"The report of January 9, 1960, by Dr. J. M. Hesser has been reviewed and although it elaborates a little bit on the diagnosis, the findings given do not show a causal connection between the claimant's condition and the conditions of employment.

"With reference to your second question—whether the breathing of dust and diesel fumes could cause poisoning, it is possible that under a given set of circumstances they might, that is not to say an opinion is given that they

could have caused it in this case. From the strictly medical standpoint, it would appear *proof in the file is lacking* that the lung condition in this case did actually result from inhalation of diesel fumes or dust." (Emphasis added.)

It appears that Dr. Moore's opinion as to a lack of causal connection was based upon the finding that "proof in the file is lacking". Petitioner urges that for this reason Dr. Moore's report does not contradict Dr. Hesser's diagnosis. He points out that Dr. Moore never examined the x-rays and laboratory findings and that therefore, taking Dr. Moore's report in the strongest light it merely indicates that Dr. Hesser's reports do not disclose sufficient detailed information for him, Dr. Moore, to arrive at a medical diagnosis. With this we agree.

Dr. Hesser's medical diagnosis was founded upon first-hand knowledge and information and included the examination of petitioner and the x-rays and laboratory findings. Dr. Moore's negative conclusions admittedly are predicated upon what the file does not show. Dr. Moore's report is no more than an opinion that from the evidence which he had available he could not medically conclude a causal relation between the injury and the pneumonia. Hence, Dr. Moore's report does not contradict the diagnosis made by Dr. Hesser and there is in fact no conflict in the medical evidence.

One final issue which is raised concerns whether a disease such as pneumonia is a proper injury within the meaning of the Workmen's Compensation Act. We have previously held that a disease constitutes an accident within the meaning of the Act if it is traceable to a definite time and place. Treadway v. Industrial Commission, 69 Ariz. 301, 213 P.2d 373. The terms "disease" and "accident" are no longer considered mutually exclusive. Any disease is compensable under our statute which follows as a natural consequence of any injury which has qualified independently as accidental. The injury embraces all the results which flow directly from it. The disease of pneumonia contracted by petitioner in this case flows directly from the unusual and unexpected conditions surrounding his employment, i. e. the defective tractor. It is traceable to a definite time and place. We hold the disease of pneumonia to be an accidental result of a combination of unusual circumstances and that therefore it is compensable.

It is ordered that the findings and award of noncompensable claim be set aside.

BERNSTEIN, V. C. J., and UDALL, JENNINGS and LOCKWOOD, JJ., concur.