505 P.2d 577

Ramon O. MARQUEZ (now Deceased), and Maria R. Marquez, Widow, Petitioners,

v.

The INDUSTRIAL COMMISSION of Arizona, Respondent,

Magma Copper Company, San Manuel Division, Respondent Employer,

State Compensation Fund, Respondent Carrier.

No. 1 CA–IC 707.

Court of Appeals of Arizona, Division 1, Department B.

Jan. 25, 1973.

Rehearing Denied Feb. 9, 1973.

Review Granted March 13, 1973.

Davis & Eppstein, by Robert W. Eppstein, Tucson, for petitioner.

William C. Wahl, Jr., Chief Counsel, The Industrial Commission of Arizona, Phoenix, for respondent.

Twitty, Sievwright & Mills, by John F. Mills, Phoenix, for respondent employer.

Robert K. Park, Chief Counsel, State Compensation Fund, Phoenix, for respondent carrier.

JACOBSON, Chief Judge, Division 1.

This appeal by way of writ of certiorari from an award of the Industrial Commis-

sion raises the question of whether a death caused by a heart attack which in turn was directly related to silicosis is compensable under the Occupational Disease Disability Act, if at all, and hence not compensable under the Workmen's Compensation Act. A.R.S. § 23–901 et seq.

The deceased, Ramon O. Marquez, had been employed by respondent, Magma Copper Company, from October 1955, until May 17, 1968. His work history prior to his employment at Magma had been as an underground miner which occupation had exposed him to silicon dioxide dust. After commencing his employment with Magma he worked underground until May 13, 1958, when he was transferred to a surface job because of medical reasons. During his underground tenure with Magma the deceased was again exposed to harmful quantities of silicon dioxide dust. The deceased died on May 30, 1968. The cause of deceased's death was cardiac failure due to the strain placed on his heart because of a long-standing fibrous condition of the lungs (silicosis). The medical testimony aptly describes the cause of the heart failure:

"Q. Was the progression of the condition or the progressed condition [silicosis], the thing you described in your earlier testimony here, as causing the corpulmonale in the sense that it came about because the heart was trying to push blood against the increased resistance of the diseased lung?

"A. Yes, the corpulmonale is a result of the effort of the heart to, as you said, to push blood through a diseased lung with increased resistance in the lung; that is something that happens over a long period of time."

■ The deceased's widow, petitioner Maria R. Marquez, filed a widow's claim for compensation. The referee recom-

mended denial of the claim on the basis that the cause of the strain on the heart was underlying silicosis, and since the silicosis itself is not compensable,[1] the heart attack caused by that silicosis is also not compensable. The Industrial Commission entered an award denying the claim.

■ Petitioner urges several reasons why her claim for widow's benefits under workmen's compensation should be compensable. The first of these is that the type of silicosis contracted by the deceased was not shown to be compensable under the Occupational Disease Disability Act[2] as interpreted by Utah Construction Co. v. Berg, 68 Ariz. 285, 205 P.2d 367 (1949).

Aside from the fact that this issue was never raised before the Industrial Commission, the dicta in Utah Construction Co. v. Berg, *supra*, classifying the types of silicosis compensable under the Occupational Disease Act was expressly disavowed by the Arizona Supreme Court in the case of Orosco v. Poarch, 70 Ariz. 227, 218 P.2d 875 (1950). In addition there is simply no evidence that the silicosis contracted by the deceased was not the type compensable under the Arizona Occupational Disease Act and, in fact, the evidence is that it was so compensable.

■ The second basis for compensability urged by the petitioner is that assuming that the silicosis was not shown to be "an occupational disease", then the deceased's "disease" constitutes an accident within the meaning of the Workmen's Compensation Act. This underlying assumption, however, is based upon the arguments made in the petitioner's first argument and the assertion that the decedent suffered from a condition known as "pneumoconiosis", rather than silicosis. While certain of the medical experts classified the decedent's condition as "pneumoconiosis", it is clear that this term is a broad general medical

1. A.R.S. § 23–1107, subsec. B (1969) requires that before silicosis is compensable as an occupational disease, the claimant must be exposed to harmful quantities of silicon dioxide dust for 1,200 work shifts within ten years immediately preceding the death. The decedent had not worked the requisite number of shifts within the ten year period prior to his death.

2. A.R.S. § 23–1101 et seq.

classification of which silicosis is a part. Dorland's Medical Dictionary 1180 (22d ed. 1951) defines "pneumoconiosis" as:

"A chronic fibrous reaction in the lungs to the inhalation of dust. It is attended by fibroid induration and pigmentation. See aluminosis, anthracosis, asbestosis, byssinosis, chalicosis, ptilosis, siderosis, *silicosis,* and tabacosis." (Emphasis added.)

This same text defines silicosis as:

"Pneumoconiosis due to the inhalation of the dust of stone, sand, or flint containing silicon dioxide; grinders' disease." Id. at 1375.

As previously indicated, there is sufficient evidence in the record to justify the Commission's findings that the deceased suffered from silicosis caused by inhalation of silicon dioxide dust, and that this silicosis was compensable, if at all, as an occupational disease. As was stated by Dr. Jack M. Layton:

"Q. What is your opinion as to the cause of death?

"A. I think, in my opinion the medical cause of death was cardiac failure, complicated by the lung disease.

"Q. Was the cardiac failure contributed to in any way by the long standing lung condition?

"A. Yes.

"Q. And do you have an opinion as to whether that long standing lung condition was in part caused by exposure to harmful quantities of silica or silicon dioxide dust?

"A. In my opinion it was."

Thus the assumption made by the petitioner is not factually supportable.

Petitioner next argues that even if the decedent's silicosis is listed under the Occupational Disease Act, this should not prevent benefits under the Workmen's Compensation Act. This argument is based upon the remedial nature of the Arizona Workmen's Compensation Act, citing Dunlap v. Industrial Commission, 90 Ariz. 3, 363 P.2d 600 (1961), and English v. Industrial Commission, 73 Ariz. 86, 237 P.2d 815 (1951). This contention, however, flies directly in the face of pronouncements by the Arizona Supreme Court that occupational diseases [i. e., those compensable under the Occupational Disease Act] are not compensable under the Workmen's Compensation Act. In re Mitchell, 61 Ariz. 436, 150 P.2d 355 (1944).

Lastly, the petitioner argues that in fact the decedent did not die of silicosis, but from a heart attack causally related to his employment, and the claim is thus compensable under Workmen's Compensation as "another heart attack case." The fallacy in this argument is that the causal relationship to the employment which caused the heart attack was the decedent's underlying silicosis which is compensable, if at all, under the Occupational Disease Act. It is apparent that this act contemplates death benefits under its terms "[w]here death results from an occupational disease arising out of his employment . . . ." A.R.S. § 23–1107, subsec. B. *Also see,* A.R.S. §§ 23–1241, 23–1244, and 23–1046.

It is apparent that the decedent in this case died (cardiac failure) as a result of an occupational disease. Unfortunately, under our present legislation, the decedent's death was not compensable as an occupational disease, and the Workmen's Compensation Act does not afford compensation for silicosis.

For the foregoing reasons, the award of the Commission is affirmed.

EUBANK, P. J., and HAIRE, J., concur.