497 S.W.2d 39 (1973)
TRI STATE INSURANCE COMPANY, Appellant,
v.
EMPLOYERS MUTUAL LIABILITY INSURANCE COMPANY and Loyd O. Bridges, Appellees.
No. 5-6223.
Supreme Court of Arkansas.
July 16, 1973.
*41 Daily, West, Core & Coffman, Fort Smith, for appellant.
Harper, Young & Smith, Fort Smith, Youngdahl, Brewer, Huckabay, Funk & Larrison by Silas H. Brewer, Jr., Little Rock, for appellees.
FOGLEMAN, Justice.
Loyd Bridges, an employee of Garrison Furniture Company from 1943 to 1969, made a claim for workmen's compensation against his employer about October 7, 1969, asserting that he had suffered a gradual accidental injury due to sustained exposure to dust. At the hearing on his claim, he contended that he became totally and permanently disabled and had been forced to leave his employment about October 14, 1969. Compensation was awarded Bridges on a finding of permanent partial disability of 70% to the body as a whole. Garrison's compensation carrier until July 1, 1968, was Employers Mutual Liability Insurance Company. Tri State Insurance Company became the carrier on that date. The Workmen's Compensation Commission refused to apportion the award, but placed all liability on Tri State. On Tri State's appeal, the circuit court affirmed the commission in all respects. On this appeal, Tri State argues that: there was no substantial evidence to support the commission's findings; the commission's findings do not support the award; the commission erred in denying appellant's motion for a further medical examination of Bridges; and the commission erred in placing all the liability on appellant, the carrier when appellee Bridges left his employment.
The commission's award was based on a virtual adoption of a referee's findings made after a remand of the case to the referee for reconsideration, following his first hearing on appellee's claim. In urging its first point appellant states: "The question to be resolved is whether the claimant sustained the burden of proving that he has suffered a 70% permanent partial disability as the result of an injury which he sustained after July 1, 1968, during appellant's coverage." But after thus stating the question, appellant seems to argue that there was no substantial evidence to show that the claimant's condition arose out of and in the course of his employment. We do find substantial evidence to support the commission's findings. In reviewing the evidence, we will refer to that most favorable to the claimant, as we must, drawing all reasonable inference in his favor.
Bridges, aged 57, had worked primarily in his employer's cabinet room during his employment by Garrison. He was a non-smoker. He did not go beyond the fourth grade in school and never had attended any kind of vocational or job-training school. He had followed no other employment, except farming, before he was employed by Garrison. His principal duties consisted of gluing wooden furniture components together. He was exposed to dust as he went about his duties. The dust was largely produced by action of wood-sanding machines. It settled on the furniture components which were assembled by Bridges and other employees. In addition, some sanding, both by hand and by machines, was conducted in the cabinet room itself. While there were fans in the cabinet room at the time Bridges left his job, the closest one to Bridges was six or seven feet from his duty station. Bridges testified that the fans were only operated in the summer and that there were no fans until the last year *42 or two he worked there. While there were windows in the room, those near Bridges were kept closed except when the temperature was high. Bridges said that these fans were simply "blowers" rather than ventilating fans, and, rather than alleviating the dust condition, just served to stir it up. Thirty to thirty-five persons worked in the cabinet room, and Bridges said that their movements also stirred up dust.
Bridges had suffered a compensable injury in 1967, which was sometimes characterized as a broken rib, but which was found by the commission to be a muscle strain of the right chest wall. This injury was caused by Bridges' having been struck by a table leg. There is also evidence that he had, on other occasions, pain and soreness in his chest. Bridges testified that, after the 1967 episode, he never ceased to suffer discomfort in his chest in varying degrees, but eventually the pain grew progressively worse.
There were no indications of lung trouble when Bridges was temporarily disabled due to the pulled muscle. Sometime in 1968, Bridges began to suspect that his chest difficulties were attributable to something other than the muscle injury because he felt the same pain in both sides of his chest, whereas his previous discomfort had been confined to the side on which the muscle had been pulled. Bridges said that the pain was intermittent and provoked by such things as movement of his arms. Bridges then consulted Dr. Hoyt Kirkpatrick, Jr., to whom he had been sent by his employer when he had the muscle or rib injury. About October 7, 1968, he thought he had again pulled a muscle, and consulted Dr. Kirkpatrick. He immediately returned to his job. About October 21, 1968, he became ill at the factory while unpacking wet materials after a fire at the plant, and went to the hospital, where he was taken to the emergency room. Bridges thought he had suffered a heart attack, because of chest pains and difficulty in breathing, which he characterized as a smothering feeling, but it turned out that this was not the case. Bridges was treated on this occasion by Dr. Wright Hawkins and a Dr. Bailey of Greenwood. He said that he had previously experienced less severe smothering spells, but they immediately became progressively worse and continued until the hearing before the referee, although after he retired, on the recommendation of Dr. Krock, they decreased in frequency and intensity.
According to Bridges, he returned to work in November 1968 and continued to work at least until August 1969, although he said that he was only able to work intermittently because of his condition. Dr. Kirkpatrick referred him to Dr. White in the spring of 1969. Dr. White discovered that Bridges had lung trouble. Sometime in September 1969, Dr. White referred Bridges to Dr. Curtis J. Krock, who treated him for lung trouble. Bridges said he had never before had any lung trouble. Chest x-rays at the time of his 1967 injury were negative. He apparently worked very few days, if at all, between August and October 1969.
Only two physicians testified but there was a medical report from another, along with the reports of Dr. Kirkpatrick as to his original treatment of Bridges. Dr. Krock, a medical internist with a specialty interest in the lung, testified on behalf of the claimant. Dr. Krock likened Bridges' history to that he had obtained, while doing his fellowship in respiratory diseases at Duke University, from cotton workers suffering from a condition attributable to cotton dust exposure called byssinosis. Dr. Krock said that Bridges' reaction to dust resembled that of those with byssinosis, but that he had not been previously aware that such a disease had been found in the wood industry. After repeated tests Dr. Krock felt that, to a reasonable medical probability, Bridges had a bronchospastic disease or respiratory disability related to chronic dust exposure, similar to asthma, which he found described in medical journals as occurring in wood workers, but for which he knew no specific medical *43 term. Dr. Krock had previously reported findings of chronic bronchitis and pulmonary emphysema, exacerbation of which he attributed to exposure to dust. Dr. Krock said that this reaction to the dust would have developed slowly over many years and that it would be impossible to diagnose either this "asthma" or "byssinosis" by a chest x-ray, because, unlike silicosis or asbestosis, there was no deposit that could be detected by this means. He stated that he had sent Bridges back to work on several occasions, but that he repeatedly returned with complaints of a tightness in the chest, chest pain, wheezing and a cough. Dr. Krock had never seen Bridges when he was actually suffering an attack such as the patient described. He felt that Bridges reached a plateau in October of 1969, and that there had been no overall change in the patient's condition from the time he first saw him up to the time of the hearing. This doctor finally stated his primary diagnosis as chronic bronchitis, bronchospasm, related to dust and fume exposure. In another report introduced, Dr. Krock recommended that Bridges discontinue working in the environment in which he had been employed, saying that he had a pulmonary illness, secondary to industrial exposure to dust, and that his job was a direct factor in causing his disability and difficulty.[1] He added that he believed it unlikely that he would be able to work at this job in the future or to secure any other job.
The report of Dr. Lees C. Forsythe, who examined Bridges on October 15, 1970, at appellant's request, was introduced. While Dr. Forsythe stated that he found no evidence of physical impairment due to pulmonary disease, and suggested that the episodes described by Bridges might be attributable to hyperventilation due to anxiety, he also stated that they could be due to an asthmatic type phenomenon on exposure to dust and fumes. Dr. Grimsley Graham, who testified on behalf of appellee Employers, agreed with Dr. Krock that environmental dust did aggravate Bridges' condition, which Graham characterized as chronic bronchitis and pulmonary emphysema. Dr. Graham said that the chronic bronchitis would precede the emphysema, which, he said, was far advanced. According to him, byssinosis means the same thing as pneumoconiosis, except that the former resulted from exposure to wood, while the latter came from exposure to metal, and usually from coal dust. He testified that inhalation of foreign agents that set up a process damaging to the lungs might be called repeated trauma, and if Bridges' condition was caused by this, it probably would take something in excess of seven years to produce it. Dr. Krock had said that Bridges' condition was "a long time in coming." Of course, we are not concerned with conflicts in the medical testimony or with determining where the preponderance of the evidence lay. We are only concerned with the substantiality of the evidence on behalf of the claimant.
We agree with appellant that the burden was upon the claimant to prove that his disability resulted from an injury received in the course of his employment. His condition, however it may be characterized, is not listed as a compensable disease, so it must necessarily have resulted from an accidental injury in order to be compensable. In this respect, we find a striking similarity to the dust inhalation we found to have constituted accidental injury in Batesville White Lime Company v. Bell, 212 Ark. 23, 205 S.W.2d 31, and Murch-Jarvis Co. v. Townsend, 209 Ark. 956, 193 S.W.2d 310.
In Bell, we found that aggravation of a pre-existing heart condition by inhalation of dust around a rock crusher over a 23-year period constituted an accidental injury under the liberal interpretation we give the *44 terms of the Workmen's Compensation Act, even though the evidence did not show the exact time when the injury could be said to have occurred. We treated the word "accidental" as if it were synonymous with "unexpected," "fortuitous," or "not to be reasonably anticipated." Accidental injury, under the authority of that case may be taken to mean one which a workman, under the circumstances, might not reasonably have expected or anticipated. We there recognized that such an injury is not necessarily the result of a single impact, but that it may be caused by a continuation of irritation upon some part of the body by foreign substances. In Murch-Jarvis, where we held that inhalation of dust which caused a bronchial condition or aggravated a pre-existing disease resulting in disability was compensable, we relied upon a definition of "accident" as meaning an unlooked-for and untoward event which is not expected or designed and "accidental injury" to mean one which is unusual, unexpected and undesigned. We also rejected the idea that inability to fix the exact date or occasion when the aggravation happened prevented the injury from being compensable.
Under the authority of these cases, we find substantial evidence that Bridges suffered an accidental injury by inhalation of dust which, together with pre-existing conditions, caused a total and permanent disability, and that 70% of his disability is attributable to the dust inhalation.
Tri State contends that the Workmen's Compensation Commission erred in denying its motion for examination of Bridges by a physician of the commission's choosing, drawing an analogy between this case and Ward Furniture Mfg. Co. v. Reather, 234 Ark. 151, 350 S.W.2d 691, in which we affirmed the action of the circuit court in remanding the claim to the Workmen's Compensation Commission with directions to employ its own qualified medical examiner in order to secure additional evidence relating to the issue whether the claimant's disability arose out of and in the course of his employment. Appellant argues that, in spite of two opinions and an amended opinion by the referee, the record is still not clear whether all the medical evidence was considered and there are many unanswered questions as to the claimant's condition and its course. The case was remanded by the commission after the referee's first hearing, because it was not clear to the commission that the referee had considered all medical reports. The second opinion of the referee seems to us to make it clear that these reports were considered. The questions which appellant deems to be unanswered seem to pertain to alleged questions in Dr. Krock's mind whether he was dealing with a disease, his difficulty in stating with medical certainty exactly what the claimant's problem was, and the possibility that Bridges was suffering from an allergy or cardiac problem. Unquestionably, the commission was clothed with authority to grant this motion. Ark.Stat.Ann. §§ 81-1319(i), 81-1323(b), 81-1327, 81-1343 (Repl.1960); Plants v. Townsend Curtner Lumber Co., 247 Ark. 824, 448 S.W.2d 349. But its granting is not mandated by the statutes or our decision in Ward Manufacturing Co. v. Reather, supra, as appellant seems to think. There we affirmed the action of the circuit court directing further medical examination and testimony. The circuit court found that medical testimony had not been fully developed in that case. There seems to have been full development of medical testimony here. Certainly, there is no indication that either insurance company has been handicapped in any way in obtaining medical testimony or that any request by them for an examination was ever denied. It is significant that Dr. Lees C. Forsythe reported to appellant's attorneys that the episodes of shortness of breath described by Bridges could be attributed either to hyperventilation due to anxiety or to an asthmatic type phenomenon on exposure to dust and fumes. Although this doctor agreed to *45 answer other questions directed to him by appellant's counsel, none seems to have been asked.
While it is true that Dr. Krock had some difficulty in determining the cause of Bridges' trouble to his own satisfaction, he did finally arrive at a reasonably certain conclusion. Complete or mathematical certainty is not required. Holstein v. Quality Excelsior Coal Co., 230 Ark. 758, 324 S.W.2d 529; Kearby v. Yarbrough, 248 Ark. 1096, 455 S.W.2d 912. Appellant suggests that appellee's trouble could be a dust-related disease, an intrinsic asthma, cardiac disease, pulmonary fibrosis or psychological shortness of breath. If the claimant's condition was a disease (whether byssinosis, asthma, emphysema, bronchitis or whatever it may be) its aggravation by dust inhalation could constitute a compensable injury. Drs. Krock and Graham seem to have agreed that it was at least highly possible that the environmental dust aggravated the condition, whatever it was. Dr. Krock considered that Bridges did not respond to standard medication administered to persons with bronchitis and asthma in arriving at his ultimate diagnosis. Dr. Forsythe found no objective evidence of cardiac disease. A cardiac problem was not reflected in any of Dr. Graham's examinations. Dr. Krock eliminated cardiac disease on the basis of all the usual tests, short of cardioarteriogram, and the absence of characteristic symptoms. Pulmonary fibrosis was suggested by Dr. Krock, but he indicated that if it existed, it was insufficient to be apparent on an x-ray picture. Psychological shortness of breath or hyperventilation was said by Dr. Krock to be usually an erroneous diagnosis in older males. Dr. Graham's test results were more consistent with hypoventilation than hyperventilation.
The very wording of the statutes cited above is indicative of the commission's discretion in requiring further medical examinations. We find no abuse of this discretion in this case.
The most difficult question presented is appellant's contention that, even though any claim based on Bridges' 1967 injury would be clearly barred by the statute of limitations, it should not be responsible for the entire award, inasmuch as the claim involved an accidental injury and not an occupational disease, and that, in order for inhalation of dust to constitute an accidental injury, each inhalation must be considered as a separate "miniature accident." Appellant proposes that, since the referee quoted a physician's statement that the condition would be seven years in developing, Employers should be held jointly liable, or, in the alternative, there should be an apportionment between the carriers, with Employers being responsible for the period from October 9, 1967 to July 1, 1968, and appellant for the period from July 1, 1968 to August 8, 1969. Employers relies upon the referee's finding that Tri State was the responsible carrier because it was the compensation carrier when Bridges was forced to quit work.
Apportionment among carriers has not been treated extensively in our decisions. Appellant relies upon Employers Casualty Co. v. United Fidelity and Guaranty Co., 214 Ark. 40, 214 S.W.2d 774, to place this jurisdiction in the category of those requiring apportionment. In that case of first impression, each carrier contended that the full liability should fall on the other. The commission found that the liability should be borne by them equally. The claimant there had a pre-existing condition which predisposed him to herniation of an intravertebral disc. He received an injury on December 19, 1946. We found substantial evidence to support the commission's finding that the claimant, by continuing to work until February 14, 1947, at his usual labors requiring heavy lifting, received successive injuries by traumatic strains which progressively aggravated his pre-existing condition into disability on the date he quit work. The appellee was the insurance carrier until February 1, 1947, when appellant took over the risk. *46 We held that the evidence, when liberally construed, was sufficient to have fastened liability on either carrier for the full amount, but that division of the liability, on the evidence before the commission was within the power and authority of the commission. The dramatic event aggravating the pre-existing condition in that case occurred during appellee's coverage, and the disability during appellant's. Here, the first dramatic event, Bridges' smothering spell in October 1968 and the disability both occurred during appellant's coverage. Insofar as the law on the subject is concerned there has been no change since that case was decided. If the commission could have placed the full liability on either carrier in the cited case, the reasons for saying that it could place the liability on appellant in this case are even stronger. We do not take the quotation from 71 C.J. 1411, § 1353, in the cited case to the effect that compensation for a single disability resulting from separate accidents occurring under different employers should be equally apportioned between the insurers of the different employers in support of the commission's authority to divide the liability to negate our preceding statement relating to the sufficiency of the evidence to have fastened the full liability on either. We said in the very beginning that the primary and decisive question was one of fact. Under the rule we followed there, the commission here might have found that either an equal division of liability or a division on the basis of a formula suggested for apportionment by appellant was appropriate. In its brief appellant had suggested that joint liability would have been proper, or, in the alternative, that we eliminate all daily recurring injuries or miniature accidents which would have been barred by the statute of limitations, i.e., prior to October 9, 1967, and apportion liability in proportion to the respective periods of coverage thereafter. This would place liability on Employers for the daily injuries during the period from October 9, 1967, to July 1, 1968, and on appellant for the period from July 1, 1968, to October 14, 1969.
It is quite likely that appellant is correct in its assertion that the great weight of authority requires that there be an apportionment among carriers whenever disability results from the cumulative effect of successive and repeated "accidental injuries" suffered in the same employment, some of which occurred during the periods of coverage of each of two or more carriers. See Quinn v. Automatic Sprinkler Co., 50 N.J.Super. 468, 142 A.2d 655 (1958); Fireman's Fund Indemnity Co. v. Industrial Accident Commission, 39 Cal.2d 831, 835, 250 P.2d 148 (1952); Royal Globe Insurance Co. v. Industrial Accident Commission, 63 Cal.2d 60, 45 Cal.Rptr. 1, 403 P. 2d 129 (1965). It may well be that, as appellant argues, it is unfair and harsh to fasten all liability on the last carrier. On the other hand, it seems to us that such a fixing of liability by the commission must, under our rule, have substantial evidentiary support. If it does not, then the exercise of the power would be arbitrary and the courts should reverse the commission's award. The circumstances here do not indicate any such arbitrary action on the part of the commission.
Since our decision in Employers Casualty Co. v. U.S.F. & G. Co., supra, there have been 13 regular sessions of the General Assembly, and our Workmen's Compensation Law has been amended at least twice by initiated acts. Neither the General Assembly nor the people have seen fit to change our rule. In view of the many equitable considerations that may enter into the fixing of such liabilities and the complexities involved in arriving at an appropriate formula, we believe that the adoption of a more rigid rule of apportionment which would not leave the matter for a factual determination by the commission should be adopted by legislative, not judicial action.
Appellee Employers urges that we treat this claim as one arising from an occupational disease by judicial declaration that it is and that we apply Ark.Stat. *47 Ann. § 81-1314(a)(6) declaring the rule fixing liability on the basis of the "last injurious exposure." We have recently recognized that adding to the statutory list of occupational diseases is a commission responsibility and not a judicial one. Barentine v. Gleghorn Oil Co. (1973) 254 Ark. , 492 S.W.2d 242. We decline to abandon that position so soon. The statute upon the subject is clear and unambiguous. Ark.Stat.Ann. §§ 81-1314, 81-1343 (Repl. 1960). Furthermore, we decline Employers' invitation to adopt the "last injurious exposure" rule by analogy, for the same reasons we refused to adopt appellant's suggested rule for apportionment. To do so would be to act legislatively.
The judgment is affirmed.
NOTES
[1] In finding that Bridges was totally disabled, Dr. Krock took into consideration that Bridges had lost the sight of one eye, and had a bilateral hernia, as well as his lung condition.