517 P.2d 1269

Ramon O. MARQUEZ (now Deceased) and
Maria R. Marquez, Widow,
Petitioner,

v.

The INDUSTRIAL COMMISSION of
Arizona, Respondent,

Magma Copper Company, San Manuel Division, Respondent Employer,

State Compensation Fund, Respondent Carrier.

No. 11153–PR.

Supreme Court of Arizona,
In Banc.

Jan. 15, 1974.

Rehearing Denied Feb. 19, 1974.

Davis & Eppstein, by Robert W. Eppstein, Tucson, for petitioner.

William C. Wahl, Jr., Chief Counsel, The Industrial Commission of Arizona, Phoenix, for respondent.

Twitty, Sievwright & Mills, by John F. Mills, Phoenix, for respondent employer.

Robert K. Park, Chief Counsel, State Compensation Fund, Phoenix, for respondent carrier.

STRUCKMEYER, Justice.

On May 30, 1968, Ramon Marquez died, and thereafter his widow, Maria, filed a claim for death benefits under Arizona's Workmen's Compensation Act. Her claim was denied by the Industrial Commission, and she brought certiorari. The Court of Appeals affirmed the award of a non-compensable claim, Marquez v. Industrial Com-

mission, 19 Ariz.App. 139, 505 P.2d 577 (1973). We accepted review. Decision of the Court of Appeals vacated and the award of the Industrial Commission set aside.

Ramon Marquez worked for Magma Copper Company, San Manuel Division, continuously from October 1955 until shortly before his death on May 30, 1968. Prior to working for Magma, decedent had worked as an underground miner at a number of copper, lead and zinc mines. He worked for Magma underground from October 1955 until the middle of May 1958, about 832 shifts. During this time he was exposed to harmful quantities of silicon dioxide dust. Thereafter, and until May 17, 1968, Marquez worked aboveground as a laborer, where he was not exposed to harmful quantities of dust. Marquez died of heart failure described medically as cor pulmonale. The cardiac failure was concededly induced by the undue strain placed upon the heart because of the long-standing fibrotic condition of the lungs.

Silicosis is classified by the Legislature as an occupational disease, A.R.S. § 23–1102, but to be compensable the statute (§ 23–1107 B) requires exposure to harmful quantities of silicon dioxide dust for 1200 work shifts within the ten years immediately preceding the death. Since the Commission denied Maria compensation for death benefits, it must have found the heart failure caused by the fibrotic condition of the lungs was not a compensable industrial accident under Arizona's Workmen's Compensation Law.

By the Constitution of Arizona, Article 18, § 8, A.R.S., compensation must be paid to a workman engaged in manual or mechanical labor and to his dependents in case of his death "if in the course of such employment personal injury to or death of any such workman from any *accident* arising out of and in the course of, such employment, * * *." (Emphasis added) The precise question presented, therefore, is whether a physical condition of a workman defined by the Legislature as a disease, which is caused, at least in part, by the workman's employment, can be considered accidental so as to compel payment of compensation under Arizona's Constitution.

We first note that a disease is defined in general as any departure from a state of health. *See* The American Illustrated Medical Dictionary, Dorland (22d Ed.). So that the categorization of a condition as a disease by the Legislature does not necessarily exclude the condition as compensable under the Constitution, Article 18, § 8. As Larson says:

"Compensation law has come a long way since the time when some courts apparently thought of 'accident' and 'disease' as mutually exclusive, so that claims could be ruled out by some such statement as that the injury was the result of disease, not accident * * *. It is generally agreed, either under express statutes or by judicial decision, that any disease is compensable which follows as a natural consequence of an injury which qualifies independently as accidental. This is nothing more than a recognition of the rule that the injury embraces all the results that flow directly from it, whether infection, disease, insanity, or anything else. There may always be controversy on causal relation, of course, when, for example, a man hospitalized by traumatic injury dies of pneumonia; but there is no serious 'by accident' issue." Vol. 1A Workmen's Compensation Law, § 37.30.

This Court held in Dunlap v. Industrial Commission, 90 Ariz. 3, 6, 363 P.2d 600, 602 (1961), that pneumonia contracted through the inhalation of tractor fumes was compensable, saying:

"At an early date a majority of jurisdictions in this country steadfastly held that to constitute an 'accident' within the meaning of the usual Workmen's Compensation Act there must have been a sudden, unexpected or violent event resulting in injury. This was the rule in Arizona after Pierce v. Phelps Dodge Corporation, 42 Ariz. 436, 26 P.2d 1017,

which held that the word 'accident' referred to a sudden and unexpected event which must have occurred to give rise to the right of compensation. However, the case of In re Mitchell, supra, [61 Ariz. 436, 150 P.2d 355] later liberalized this restrictive rule and held that although accidental injury usually involved a sudden happening caused by some violent or external means such as traumatic injury, an industrial accident need not be an instantaneous happening and violence is not a prerequisite of the right to compensation."

And we also said:

"The terms 'disease' and 'accident' are no longer considered mutually exclusive. Any disease is compensable under our statute which follows as a natural consequence of any injury which has qualified independently as accidental." Dunlap, supra, 90 Ariz. at 8, 363 P.2d at 603.

As early as 1944, in In re Mitchell, 61 Ariz. 436, 150 P.2d 355 (1944), this Court held that the inhalation of carbon tetrachloride causing death through necrosis of the liver and other damage to vital organs was compensable as an accident although there was no instantaneous mishap which, taken by itself, could be recognized as an accident. In English v. Industrial Commission, 73 Ariz. 86, 237 P.2d 815 (1951), this Court held that the inhalation of nitric oxide and sulphur dioxide fumes causing an illness was compensable within the contemplation of the Workmen's Compensation Act, notwithstanding there was no sudden or external violence. In Mead v. American Smelting and Refining Company, 90 Ariz. 32, 363 P.2d 930 (1961), it was held that there was a causal connection between the petitioner's asthma and pulmonary emphysema, or at least an aggravation thereof through the claimant's inhalation of dust and smoke, and that this was compensable under the Workmen's Compensation Act.

We conclude that while it is to be recognized that there is authority to the contrary, this State has clearly been committed to the view over many years that the inhalation of poisonous compounds and dust having a detrimental effect upon the lungs and other vital organs is compensable under Article 18, § 8, of Arizona's Constitution. We think this is true where there has been a sudden onslaught of damage from silicon dust, as in Pero v. Collier-Latimer, Inc., 49 Wyo. 131, 52 P.2d 690 (1935), or where there is a gradual deterioration through protracted exposure and an accident has been found by treating each impact or inhalation of silicon dust as a miniature accident in itself leading to the ultimate disability, Brown v. St. Joseph Lead Company, 60 Idaho 49, 87 P.2d 1000 (1939). *See also*, Tri State Ins. Co. v. Employers Mutual, Ark., 497 S.W.2d 39 (1973), and Batesville White Lime Co. v. Bell, 212 Ark. 23, 205 S.W.2d 31 (1947).

The award is ordered vacated.

CAMERON, V. C. J., and LOCKWOOD, J., concur.

HAYS, Chief Justice (dissenting).

I dissent.

This case is a perfect example of the statement that hard cases make bad law. One cannot help having great sympathy for the widow who is seeking death benefits for her husband's death. Obviously, the majority has brought this case into the purview of the Workmen's Compensation Act because our Arizona Occupational Disease Act fails to provide a much needed relief.

While conceding that the Occupational Disease Act is archaic and greatly in need of change, we cannot go along with judicial legislation in this area. This is a matter for the legislature, and for that reason I dissent.

HOLOHAN, J., concurs.