24 Ariz. App. 427 (1975)
539 P.2d 541
EMPLOYERS MUTUAL LIABILITY INSURANCE COMPANY OF WISCONSIN, Petitioner,
v.
The INDUSTRIAL COMMISSION of Arizona, Respondent, El Rancho Markets, Respondent Employer, Betty L. Barbee, Respondent Employee.
No. 1 CA-IC 1227.
Court of Appeals of Arizona, Division 1, Department C.
August 26, 1975.
Browder & Gillenwater, P.C., by Powell B. Gillenwater, Phoenix, for petitioner.
*428 Greg L. Folger, Chief Counsel, The Industrial Commission of Arizona, Phoenix, for respondent.
Meyer & Vucichevich, by J. Terence Fox, Phoenix, for respondent employee.
OPINION
STEVENS, Judge.
The two basic questions presented in this review of a workman's compensation award are:
Was the petitioner's claim timely filed? and
Can there be a compensable injury in the absence of a single event which bears a causal relationship to the claimed injury?
We answer both questions in the affirmative and affirm the award.
Betty L. Barbee (petitioner), except for a brief period of time, was employed by El Rancho Markets (El Rancho) from sometime in 1969 until she voluntarily resigned in mid-1973. Her resignation was upon the recommendation of her doctor. The petitioner's duties with El Rancho included ordering non-food items, taking care of the deliveries thereof when received and stocking shelves. The stocking of shelves involved physical movements which included the extending of her right arm above her shoulder and head, a position of abduction, at the same time moving her head back to a position of extension.
Approximately two weeks prior to 13 March 1971 she began to experience pain in her neck and right shoulder. She had previously seen William Henry Johannsen, D.O., an osteopathic physician of some 22 years of practice, for her personal, non-industrial professional care. Dr. Johannsen diagnosed her problem as bursitis and gave her conservative care including aspirin. The petitioner appeared to respond well. There were periods as long as from 10 June 1971 to 18 April 1972 and from 28 August 1972 to 8 February 1973 when the petitioner did not see Dr. Johannsen for this problem. She last saw Dr. Johannsen professionally on 17 May 1973. Neither the petitioner nor Dr. Johannsen gave any consideration to the fact that there might be a work-related causal relationship to her problem. The petitioner's response to Dr. Johannsen's treatment was such that he saw no need for X-rays and none was taken. Shortly after her last professional visit with Dr. Johannsen he became ill and he was not available for medical consultation.
Thereafter the petitioner developed a severe pain with neck and shoulder stiffness. On 25 June 1973 she consulted Robert A. Johnson, M.D., an orthopedic surgeon. X-rays were taken and they revealed "degenerative disc disease in the lower cervical spine at the C-5-6 and C-6 C7 level." The doctor's physical examination revealed that the petitioner had a "frozen shoulder on the right." There is no contention that the degenerative disc disease bore any causal relationship with her employment.
Dr. Johnson testified that there are several potential causes for a frozen shoulder syndrome. He took an extended history and by the process of elimination he attributed the cause to her work-related movements of lifting, arm abduction and head extension. This was the petitioner's first knowledge that her problems were work-related. She returned to her employment, attempted unsuccessfully to reduce the aggravating movements, and when unable to do so she left her employment as recommended by Dr. Johnson. She filed her industrial claim on 23 August 1973.
The carrier issued its notice of claim status denying the claim and asserting "no injury in the course and scope of your employment. The statute of limitations has run." In due time a hearing was held. Dr. Johannsen testified that he agreed with Dr. Johnson's diagnosis and stated:
"* * * as I look back, I would say that the trauma of reaching, extension, the lifting would continue to produce it."
The petitioner was questioned as to why, in her claim, the "date of injury" was given as "3-12-71." She explained that after she learned of the industrially related causation from Dr. Johnson she sought the *429 help of Norma (last name not given), El Rancho's "insurance gal." Norma would ask questions which the petitioner would answer and Norma would fill in the blanks. The petitioner recalls advising Norma that she first visited Dr. Johannsen in relation to the pain on 13 March 1971. The petitioner's claim also recited "no accident-occupational disease." Even though the Occupational Disease Act was then in force, the petitioner's problem was not specified therein nor covered by that act. This error in the claim would not preclude a proper adjudication by the Commission.
TIMELINESS
A.R.S. § 23-1061(A) requires that the claim be filed "within one year after the injury occurred or the right thereto accrued." The hearing officer recognized that:
"the time for filing begins to run when the injury becomes manifest or when the claimant knows or in the exercise of reasonable diligence should have known that she sustained a compensable injury, and the Workmen's Compensation Act does not place upon the employee the duty of knowing the nature of the disability or its relationship to the employment before these things are reasonably ascertainable by the medical profession."
He cited:

"McCormick v. Industrial Commission, 96 Ariz. 88, 392 P.2d 299 (1964); Freig v. Industrial Commission, 15 Ariz. App. 187, 487 P.2d 408 (1971); Bird v. Industrial Commission, 14 Ariz. App. 322, 483 P.2d 63 (1971); Mead v. American Smelting and Refining Company, 1 Ariz. App. 73, 399 P.2d 694 (1965)."
We concur in this determination.
THE ACCIDENT
In relation to most industrial claims there is an identifiable event on a specific date and at a definite location. That specificity is not always required. The inhalation of matter which causes industrially related disabilities bears the classification of an "accident" and can be over a period of time rather than a single, isolated incident. See Marquez v. The Industrial Commission of Arizona, 110 Ariz. 273, 517 P.2d 1269 (1974); Dunlap v. Industrial Commission of Arizona, 90 Ariz. 3, 363 P.2d 600 (1961), and Reilly v. The Industrial Commission of Arizona, 1 Ariz. App. 12, 398 P.2d 920 (1965). In Marquez, supra, our Supreme Court stated that there is a compensable inhalation claim "where there is a gradual deterioration through protracted exposure and an accident has been found by treating each impact or inhalation of silicon dust as a miniature accident in itself leading to the ultimate disability." 110 Ariz. at 275, 517 P.2d at 1271. In Reilly, supra, this Court reviewed a number of Arizona cases and observed:
"* * * we find that the law in Arizona is that when a condition has developed, not instantaneously, but gradually, over a period of time, resulting in a definite though unexpected injury or disease, which injury or disease is definitely work-connected, then said injury or disease is the result of an `accident' within the terms of our Workmen's Compensation Act, and is compensable." 1 Ariz. App. at 15, 398 P.2d at 923.
Other states have recognized the principle of an accumulation of a series of minor industrial episodes constituting a compensable accident. See American Maize Products Co. v. Nichiporchik, 108 Ind. App. 502, 29 N.E.2d 801 (1940); Kacavisti v. Sprague Electric Co., 102 N.H. 266, 155 A.2d 183 (1959); Consolidated Gas Utilities Corp. v. Jeter, 205 Okl. 471, 238 P.2d 804 (1951); and Quaker Oats Co. v. Industrial Commission, 414 Ill. 326, 111 N.E.2d 351 (1953).
The petitioner sustained a series of traumatic attacks upon her body, each an accident, culminating in the problems diagnosed by Dr. Johnson. We are not here faced with the situation of body infirmities developing from the wear and tear which *430 the body experiences from long, heavy, body straining employment as in Inglis v. Industrial Commission of Arizona, 11 Ariz. App. 368, 464 P.2d 814 (1970).
There was testimony that the petitioner experienced pain while mopping her floors at home. There was no medical evidence that mopping floors contributed to her frozen shoulder syndrome. The only factors contributing thereto were the work-related arm abduction and head extension.
The award is affirmed.
NELSON, P.J., and WREN, J., concurring.