541 P.2d 415

**STATE COMPENSATION FUND and Foote Mineral Co. (Vanadium Corporation of America), Petitioners,**

v.

**Fannie Begay YAZZIE, widow of Clifford H. Yazzie, Deceased, Respondent Widow,**

**The Industrial Commission of Arizona, Respondent.**

**No. I CA–IC 1223.**

Court of Appeals of Arizona,
Division 1,
Department C.

Oct. 16, 1975.

Rehearing Denied Nov. 19, 1975.
Review Denied Dec. 23, 1975.

Robert K. Park, Chief Counsel, State Compensation Fund by R. Kent Klein, Phoenix, for petitioners.

Ward, Hufford, Blue & Withers by Roy Ward, Flagstaff, for respondent widow.

Greg L. Folger, Chief Counsel, The Industrial Commission of Ariz., Phoenix, for respondent.

OPINION

STEVENS, Judge, Retired [1].

Clifford H. Yazzi died on 4 March 1972 after working approximately 20 years as an underground uranium miner in the Cove Mining District of Arizona. His widow, Fannie Begay Yazzie, filed a claim for benefits, which was received by the Commission on 8 March 1973.[2] The claim

---

[1]. This matter was taken under advisement prior to Judge Stevens' retirement.

[2]. The Commission received a letter and accompanying documents on 2 March 1973 from the applicant's attorney stating that the

Widow's and Dependent's Claim for Compensation for the death of Clifford H. Yazzie was enclosed. Due to a clerical oversight in the attorney's office, the claim form was not enclosed. It was eventually mailed separately and was received on 8 March 1973.

was denied by the insurance carriers[3] and a hearing was held on the 7th and 8th days of March 1974. The hearing officer held the widow's claim to be compensable under the Workmen's Compensation Act, but not compensable under the Occupational Disease Disability Act because of the date of filing. This claim is now before the court by a writ of certiorari to review the lawfulness of the award.

Clifford H. Yazzie worked for the Foote Mineral Company[4] from March 1963 through June 1967. Prior to his employment with Foote, he had worked in other mines from September 1948 until March 1963. During these years as an underground uranium miner Yazzie accumulated approximately 1,207 Working Level Months. (A working level month is the standard used to measure the radiation that the miner is exposed to. The Environmental Protection Agency has determined that an exposure rate up to a level of four working level months per year is acceptable. But exposure at a rate of more than four working level months per year is harmful.)

Victor E. Archer, M.D., of Salt Lake City, Utah, a renowned expert on epidemiological studies, particularly lung cancer among employees in the uranium mines, established that work in underground uranium mines can expose the miners to a harmful quantity of radiation. Dr. Archer testified:

"Q. Given the information which you have and on which you formed your opinion as to the approximate working level month exposure of Mr. Yazzie, could you say that there is a direct causal connection between the conditions under which the work in the uranium mines was performed and the disease as he contracted it?

"A. Yes, I would conclude there is a direct relationship.

"Q. Can you say that the disease followed as a natural incident of the work as a result of the exposure occasioned by the nature of his employment?

"A. Yes.

"Q. Could you say that his disease was incidental to the character of the business in which he was engaged?

"A. Incidental? Do you mean by that that it was a part of it or a necessary consequence necessarily associated with it?

"Q. Yes.

"A. Yes, in that sense, then, I would say yes.

"Q. Can you say that the disease after its contraction appears to have had its origin in a risk connected with the employment, and to have flowed from that source as a natural consequence?

"A. Yes."

There is no conflict with Dr. Archer's testimony establishing the relationship between the death from lung cancer and Yazzie's employment in the mines.

The cover letter was found by the hearing officer to "qualify as her unequivocal, written manifestation to claim benefits arising from the death of her husband, the documents are sufficient to constitute a claim," filed on 2 March 1973. The hearing officer cited: *Kasalica v. Industrial Commission of Arizona*, 65 Ariz. 28, 173 P.2d 636 (1946) ; *Dustin v. Industrial Commission of Arizona*, 43 Ariz. 96, 29 P.2d 155 (1934) ; *Freig v. Industrial Commission of Arizona*, 15 Ariz.App. 187, 487 P.2d 408 (1971) ; *Hamrick v. Industrial Commission of Arizona*, 15 Ariz.App. 277, 488 P.2d 482 (1971) ; *McNatt v. Industrial Commission of Arizona*, 13 Ariz.App. 158, 474 P.2d 1010 (1970) ; Rules 7 and 56, Rules of Procedure, The Industrial Commission of Arizona.

3. Foote Mineral Co. was insured by both the State Compensation Fund and Liberty Mutual Insurance Company, Liberty Mutual began insuring Foote on 1 January 1969. The State Compensation Fund insured the company from May, 1947 to 19 March 1970. The overlap in the coverage is of no significance because Yazzie did not work after 1 January 1969. Liberty Mutual was eventually dismissed from the claim.

4. Vanadium Corporation of America became Foote Mineral Company on 31 August 1967.

■ Before proceeding with this discussion, it must be noted that the Occupational Disease Disability Act was amended in 1971 and finally repealed in August 1973, at which time the Workmen's Compensation Act was amended. Since Yazzie died in 1972, the law must be applied as it stood at that time rather than as it stands now.

Radiation illness is compensable under the Occupational Disease Disability Act, A.R.S. § 23–1102(12). Lung cancer caused by an excessive amount of exposure to ionizing radiation is embraced within the term "radiation illness." But, the widow's claim is untimely under A.R.S. § 23–1224(A)(5), which states:

"5. If the claim is made by a dependent of an employee and based upon death resulting from radiation illness, it shall be filed within *six months after the person entitled to file such claim knows, or by the exercise of reasonable diligence should know, the possible relationship of the death to the employment.*" (Emphasis added.)

Mrs. Yazzie testified:

"Q. BY THE HEARING OFFICER: Did you know that he died from cancer?

"A. Yes.

"Q. Did you know then that the cancer was related to his work as a miner?

"A. Yes, since the time he became employed he had complained about pain in his insides, and also resulted in pneumonia several times.

"Q. So you did know on the day of his death that he died from this cancer problem?

"A. Yes.

"Q. And on that day did you think that was related to his job?

"A. Yes, I think.

"Q. Are you uncertain?

"A. No, I'm not uncertain, I know for sure that his death was as a result."

She filed her claim 12 months after the death of her husband. Therefore, the Occupational Disease Disability Act may not be utilized by the widow. She urges that she should be allowed to recover under the Workmen's Compensation Act, which has a statute of limitations of one year rather than six months after the injury occurred or the right thereto accrued. See A.R.S. § 23–1061(A).

It has been held that a disease, which is caused in part by the workman's employment, can be considered accidental and compel payment of compensation under the Arizona Constitution, Article 18, § 8, 1 A.R.S., which authorized the Workmen's Compensation Act. *Marquez v. Industrial Commission of Arizona,* 110 Ariz. 273, 517 P.2d 1269 (1974). See also, *Dunlap v. Industrial Commission of Arizona,* 90 Ariz. 3, 363 P.2d 600 (1961); *Pierce v. Phelps Dodge Corporation,* 42 Ariz. 436, 26 P.2d 1017 (1933); *Reilly v. Industrial Commission of Arizona,* 1 Ariz.App. 12, 398 P.2d 920 (1965); *Mead v. American Smelting and Refining Co.,* 1 Ariz.App. 73, 399 P.2d 694 (1965). A holding that disease and accident are not mutually exclusive and that a disease may be compensable under the Workmen's Compensation Act does not, by itself, answer our question as to whether a specific condition defined in the Occupational Disease Disability Act is solely compensable under that act or if it may be compensable under either act.

The respondent widow relied heavily on *Marquez,* supra. *Marquez* involved a workman who died of cardiac failure induced by undue strain placed on the heart because of silicosis. Silicosis is specifically defined as an occupational disease, A.R.S. § 23–1102(10), but to be compensable the workmen must comply with A.R.S. § 23–1107(A)(3). Marquez had not met the requirements. Nevertheless, the Supreme Court found the widow's claim to be compensable under the Workmen's Compensation Act.

"The precise question presented, therefore, is whether a physical condition of a workman defined by the Legislature as a disease, which is caused, at least in part,

by the workman's employment, can be considered accidental so as to compel payment of compensation under Arizona's Constitution.

"We first note that a disease is defined in general as any departure from a state of health. See The American Illustrated Medical Dictionary, Dorland (22d Ed.). *So that the categorization of a condition as a disease by the Legislature does not necessarily exclude the condition as compensable under the Constitution,* Article 18, § 8." (Emphasis added.) 110 Ariz. at 274, 517 P.2d at 1270.

The Supreme Court seems to be saying in *Marquez* that if a required condition of the Occupational Disease Disability Act is not met, it may still be compensable under the Workmen's Compensation Act.

However, the case law following *Marquez* has not borne out that interpretation. See *Featherman v. Industrial Commission of Arizona*, 112 Ariz. 52, 537 P.2d 922 (1975) (rehearing denied), vacating 22 Ariz.App. 131, 524 P.2d 965 (1974). Featherman was disabled by silicosis, but not eligible to receive compensation under the Occupational Disease Disability Act due to A.R.S. § 23–1107(A)(3). Featherman urged the Court to award him compensation under the Workmen's Compensation Act. The Supreme Court stated:

"The Court of Appeals in setting aside the award, took the view that petitioner's claim was within the scope of *Marquez v. Industrial Commission,* 110 Ariz. 273, 517 P.2d 1269 (1974). * * * We cited to a number of Arizona cases in which the inhalation of poisonous compounds and dust having a detrimental effect on the lungs and other vital organs was held to be compensable under the Workmen's Compensation Law. This was for the purpose of showing that in Arizona there need not be a sudden, un-

expected or violent event resulting in injury. *Those cases did not pass upon the question of whether the injuries suffered because of the inhalation of poisonous substances were compensable under Arizona's Occupational Disease Law.* If that question was presented, it was not discussed. * * *

"We hold that since *petitioner's specific disability is compensable as an occupational disease, he is excluded from compensation under the Workmen's Compensation Law.*" (Emphasis added) 112 Ariz. at 53, 54, 537 P.2d at 923, 924.

██ Following *Featherman* we must set aside the award in the instant case. In so doing we realize that the law may be inconsistent in the light of the repeal of the Occupational Disease Disability Act and amendment of the Workmen's Compensation Act. Featherman, Yazzie and the few others who were so unfortunate as to die or become disabled before the changes became effective are left with no right to obtain compensation under the Workmen's Compensation Act where others who died or became disabled after the changes took effect may be eligible to receive compensation under the revised Workmen's Compensation laws. The respondent widow urges that the Occupational Disability Disease Act is unconstitutional as being contrary to the Workmen's Compensation Act and to Article 18 § 8 of our Constitution. We do not agree. In the absence of legislation adopted after the enactment of the Workmen's Compensation Act there would be no compensation payable pursuant to Industrial Commission procedures for disabilities or death arising out of occupational diseases.

*Featherman* mandates that we rule that The award is set aside.

NELSON, P. J., Department C, and WREN, J., concur.