543 P.2d 790

STATE COMPENSATION FUND and Kerr-
McGee Oil Industries, Inc.,
Petitioners,

v.

Cora Mae JOE, widow of David S. Joe, De-
ceased, Respondent Widow,

The Industrial Commission of Arizona,
Respondent.

STATE COMPENSATION FUND, Kerr-Mc-
Gee Oil Industries and Foote Mineral Co.
(Vanadium Corporation of America), Peti-
tioners,

v.

Fannie DICK, widow of Clark Dick, De-
ceased, and Fannie Dick as Administra-
trix of the Estate of Clark Dick, Respond-
ent Widow,

The Industrial Commission of Arizona,
Respondent.

Nos. 1 CA–IC 1224 and 1225.

Court of Appeals of Arizona,

Division 1,

Department C.

Dec. 18, 1975.

Rehearing Denied Jan. 2, 1976.
Review Denied Jan. 27, 1976.

Robert K. Park, Chief Counsel, State Compensation Fund by R. Kent Klein, Phoenix, for petitioners.

Taussig & Cobb, by John Whitehouse Cobb,[1] Boulder, Colo., Richard Hughes, Shiprock, N. M., Ward, Hufford, Blue & Withers by Roy Ward, Flagstaff, for respondent Widows.

Greg L. Folger, Chief Counsel, The Industrial Commission of Arizona, Phoenix, for respondent.

## OPINION

STEVENS, Judge, Retired.[2]

We have decided to consolidate 1 CA–IC 1224 (the Cora Mae Joe claim) and 1 CA–IC 1225 (the Fannie Harvey Dick claim) because the issues presented to the Court are identical.

The first issue, and the main thrust of both cases, is whether a widow may recover compensation under the Workmen's Compensation Act when the workman died from a disease that is defined within the Occupational Disease Disability Act.[3] If the answer to the first issue is in the negative, then the issue of whether an Arizona employer is liable for compensation when the employee has worked and incurred further injurious exposure in another state must be examined, assuming the claims are timely and adequate.

## THE CORA MAE JOE CLAIM

David S. Joe, at the age of 33, died on 12 October 1971. His widow filed her widow's and dependent's claim in Arizona on 26 June 1972. She had previously filed a claim in Colorado on 17 December 1971.[4] A formal hearing was held on her Arizona

claim on 7 March 1974 and the hearing officer found this claim to be compensable under the Arizona Workmen's Compensation Act, but not compensable under the Occupational Disease Disability Act because A.R.S. § 23–1105 states that only "the employer in whose employment the employee was last injuriously exposed to the hazards of such disease * * *" is liable to pay compensation. There was also an issue of timeliness under the Occupational Disease Disability Act.

The deceased worked from 1954 until 13 August 1969 as an underground uranium miner. He worked in the mines of Arizona from 1954 until March, 1963. For the period of 1965–1966 he worked in Utah, New Mexico or both—the record is unclear. Then he worked the remainder of his time in Colorado: 1966–1969. He stopped work completely as of 13 August 1969.

It was determined in March 1969 that Joe had anaplastic carcinoma,' commonly referred to as lung cancer. He filed his own claim in Colorado before his death stating that his illness prevented him from working.

Victor E. Archer, M.D., of Salt Lake City, Utah, a renowned expert on epidemiological studies, specializing in lung cancer among uranium miners, testified that Joe's death was causally related to his employment:

"Q. On the basis of those observations what is your conclusion as to the causal connection between Mr. Joe's employment as a uranium miner and his subsequent incurrence and death of lung cancer?

1. Mr. Cobb was specially admitted to argue this case before the Arizona Court of Appeals.

2. These cases were taken under advisement prior to Judge Stevens' retirement.

3. The Occupational Disease Disability Act was repealed on 8 August 1973 and the Workmen's Compensation Act was amended in order to include occupational diseases. Since

Joe died on 12 October 1971 and since Dick died on 21 January 1973 the Occupational Disease Disability Act and the Workmen's Compensation Act must be applied as they appeared at that time because the revisions were not expressly made retroactive.

4. Mrs. Joe's attorneys have notified our Court that the Colorado claim has been found to be compensable.

"A. It would be my opinion that the exposure to radiation in uranium mines was probably the cause of his lung cancer.

"Q. Would you say that the causal connection is direct between the radiation exposure and the lung cancer, in your opinion?

"A. Yes.

"Q. Once again, would you say that the radiation to which he was exposed in the course of his employment was a direct incident of his employment in the mines?

"A. I would say yes."

There was no contradicting medical testimony presented.

## THE FANNIE HARVEY DICK CLAIM

Clark Dick first complained of chest pain in August, 1971. Anaplastic carcinoma, commonly known as lung cancer, was firmly diagnosed on 23 February 1972. Dick filed his own claim on 28 August 1972. On 21 January 1973 he had a cardiorespiratory arrest and died. The medical reports of Shiprock Indian Hospital state that the cardiac arrest was secondary to his carcinoma. His widow filed a widow's and dependent's claim on 8 March 1973. She also filed a claim in Colorado. A formal hearing was set for 7 March 1974 in Arizona after Mrs. Dick was appointed administratrix of her husband's claim by the Navajo Tribal Court. The hearing officer found the claims (both deceased's and the widow's) compensable under the Arizona Workmen's Compensation Act, but not compensable under the Occupational Disease Disability Act because of A.R.S. § 23–1105, where only the last employer whose employment caused an injurious exposure is held liable for compensation.

The deceased worked from 1951 until 1971 in the uranium mines, moving from one mine to another as is typical among uranium miners. The hearing officer found that he had worked for Vanadium Corporation of America and/or its successor, Foote Mineral Co., from 1956 into June 1958, from March 1963 into January 1964, from March 1964 into June 1967 and from September 1967 through May 1968. He worked for Kerr-McGee at different times in the years 1952, 1953, 1954, 1955, 1959, 1960, 1961, 1962 and 1963. From 1968 on he worked in Colorado.

Dr. Archer also testified as to the causal relationship between Dick's employment and his lung cancer which lead to his death:

"Q. Doctor, based upon your studies which we've discussed this morning and based upon the particular information you have concerning Clark Dick, what is your opinion as to the causal connection between the conditions under which Mr. Dick was employed as a uranium miner and the disease of which he ultimately died?

"A. Yes. I've reviewed the case of Clark Dick and he was quite young at his death, 40 years old, he had mined uranium for approximately—started mining uranium approximately 20 years before he developed lung cancer. He smoked very little and he had 1,280 work level months of exposure and the cell type of his cancer was oat cell, so considering all those things I would state that most probably his lung cancer was caused by radiation exposure which he received in uranium mines."

NO CONFLICTING TESTIMONY APPEARS IN THE RECORD. WHEN A WORKMAN DIES FROM A DISEASE THAT IS ENUMERATED IN THE OCCUPATIONAL DISEASE ACT CAN IT BE FOUND TO BE COMPENSABLE UNDER THE WORKMEN'S COMPENSATION ACT?

A third case, *State Compensation Fund v. Yazzie,* Ariz.App., 541 P.2d 415 (1975), was heard at the same time as these two cases and it presented this same

question. We held in *Yazzie* that "lung cancer caused by an excessive amount of exposure to ionizing radiation is embraced within the term of 'radiation illness,'" as it is defined in A.R.S. § 23–1102(12).

*Yazzie* refers to a line of cases which state "that a disease, which is caused in part by the workman's employment, can be considered accidental and compel payment of compensation under the Arizona Constitution, Article 18, § 8, 1 A.R.S." See *Marquez v. Industrial Commission of Arizona*, 110 Ariz. 273, 517 P.2d 1269 (1974); *Dunlap v. Industrial Commission of Arizona*, 90 Ariz. 3, 363 P.2d 600 (1961); *Pierce v. Phelps Dodge Corporation*, 42 Ariz. 436, 26 P.2d 1017 (1933); *Reilly v. Industrial Commission of Arizona*, 1 Ariz.App. 12, 398 P.2d 920 (1965); *Mead v. American Smelting And Refining Co.*, 1 Ariz.App. 73, 399 P.2d 694 (1965).

*Marquez*, supra, seems to be on point. *Marquez* allowed the worker to recover under the Workmen's Compensation Act when a required condition of the Occupational Disease Disability Act was not met. Nevertheless, the Supreme Court, In *Featherman v. Industrial Commission Of Arizona*, 112 Ariz. 52, 537 P.2d 922 (1975) (rehearing denied), vacating 22 Ariz.App. 131, 524 P.2d 965 (1974), stated:

"We hold that since petitioner's specific disability is compensable as an occupational disease, he is excluded from compensation under the Workmen's Compensation Law." 112 Ariz. at 53, 54, 537 P.2d at 923, 924.

*Featherman* mandates that both of these awards be set aside.

SINCE THE CLAIMS ARE NOT COMPENSABLE UNDER THE WORKMEN'S COMPENSATION ACT, CAN THEY BE COMPENSA-BLE UNDER THE OCCUPATIONAL DISEASE DISABILITY ACT?

■ A.R.S. § 23–1105 limits the employer's liability:

"Where compensation is payable for an occupational disease the only employer liable shall be the employer in whose employment the employee was *last injuriously exposed to. the hazards of such disease, * * *.*" (Emphasis added)

Dr. Archer testified that Joe had accumulated approximately 834 Work Level Months [5] in Arizona out of a total of 1,450. He further testified:

"Q. Okay. Doctor, in your opinion is that level of exposure, 834 working level months, would that constitute an injurious exposure?

"A. Yes, I would consider that an injurious exposure.

"Q. Would you state whether in your opinion that level of exposure would be sufficient to significantly increase likelihood of Mr. Joe's incurring lung cancer?

"A. Yes, it would.

"Q. Doctor, looking now at Exhibit O, your letter to Mr. Klein of February 26th, 1973, on the third page of that letter in the last paragraph you discuss Mr. Joe's employment with Climax Uranium Company during 1966 through 1969, and you state that his cumulative exposure for the period was estimated as between 60 and 100 working level months, and then you state, 'Under these circumstances it is my opinion *that the last injurious exposure incurred by Mr. Joe occurred while employed by Climax Uranium Company during the 1966–1969 period.'* Is the basis for that statement the fact that the exposure to which Mr. Joe was subjected while working for Climax

---

5. A working level month is the standard used to measure the radiation that the miner is exposed to. The Environmental Protection Agency has determined that an exposure rate up to a level of four working level months per year is acceptable. But, exposure at a rate of more than four working level months per year is harmful.

was in excess of what is now considered a safe or permissible level?

"A. Yes, that was part of the reason. Also the other reason was that the cumulative exposure was of a significant amount." (Emphasis added)

In discussing Dick, Dr. Archer testified:

"Q. Have you had occasion to break down the amount of his exposure which, according to your estimates, he received while employed in Arizona?

"A. Yes, we totaled up the Arizona figures separately and they came to 771 working level months as having been received in Arizona.

"Q. Doctor, in your letter to Mr. Klein, Page 3, the last paragraph, you state that Mr. Dick was employed for Climax Uranium Corporation from June '68 to February '70 and in the GMG–DV–Sunday Mine and his exposure was approximately 20 working level months and his exposure on individual occasions occasionally exceeded permissible levels and it is your opinion that his work for Climax Uranium Corporation represented the last injurious exposure for Mr. Dick. I wonder if you could elaborate on what you mean by 'last injurious exposure' in that context.

"A. Well, that last injurious exposure is a legal term. We don't use it as a medical term but it's a legal term which to the best of our ability pinpoints the last group of—the last job or work in which the man was employed which gave —in which he received significant exposures, and generally in determining whether or not it was a significant exposure we would look to see first whether or not his exposures exceeded the maximum permissible level at any time during that period and then next we would look at the total work level months during that period.

"MR. HUGHES: Q. In saying that exposure Mr. Dick incurred while employed at Climax was injurious do you mean to suggest that that exposure by itself would significantly increase Mr.

Dick's chances of incurring lung cancer?

"A. Not necessarily. I think what I would say is that it would probably increase his chances of developing lung cancer from two standpoints: first, that it adds a little to his total cumulative work exposure, and, in addition, the— that exposure might serve as a—might act as a promoting agent to cause any cancer previously induced to become evidenced."

Dr. Archer also testified as to the Arizona exposure accumulated by Dick:

"Q. Could you tell us whether in your opinion the exposure sustained by Mr. Dick in the Arizona mines would have been sufficient in and of itself to have substantially increased Mr. Dick's chances of incurring lung cancer?

\* \* \* \* \* \*

"THE WITNESS: Yes, I would say that exposure by itself would have substantially increased his risk of cancer."

Both of the deceased workers obtained more injurious exposure after leaving their employment in Arizona. The respondent widows urge that the last injurious exposure language found in the Occupational Disease Disability Act refers to the last injurious exposure within the State of Arizona.

It should be noted, that in both of these cases, the lung cancer actually appeared after the workman left Arizona. There is no question that the accumulated exposure in Arizona increased the risk of lung cancer developing, but more exposure was accumulated after the Arizona exposure. The legal principle involved here has been summarized by Larson:

"When a disability develops gradually, or when it comes as the result of a succession of accidents, *the insurance carrier convering the risk at the time of the most recent injury or exposure bearing a causal relation to the disability is usually liable for the entire compensation.*" (Emphasis added) Larson's Workmen's Compensation Law, § 95.00.

Arizona's workmen's compensation law has held that an employer "takes an employee subject to the employee's condition." See, *Condos v. Industrial Commission Of Arizona*, 92 Ariz. 299, 376 P.2d 767 (1962); *Murray v. Industrial Commission Of Arizona*, 87 Ariz. 190, 349 P.2d 627 (1960); *Meador v. Industrial Commission Of Arizona*, 2 Ariz.App. 382, 409 P.2d 302 (1966).

The Colorado employer hired these men knowing that they had worked in the Arizona uranium mines for years. The last working environment that injuriously exposed these men to the hazards of lung cancer was in Colorado. A.R.S. § 23–1105 precludes these widows from now receiving compensation under the Arizona Occupational Disease Disability Act.

The last issue raised by the Joe claim was whether the claim was timely. This issue is moot because if timely or not, the widow still is not allowed to receive compensation under the Occupational Disease Disability Act.

The awards of the Industrial Commission are set aside.

NELSON, P. J., and WREN, J., concur.