The **BLACKFEET TRIBE OF the BLACKFEET INDIAN RESERVATION, a Federally Chartered Corporation, Plaintiff,**

v.

**Verlin F. WIPPERT and Loretta L. Wippert, Defendants.**

**No. CV 77–44–GF.**

United States District Court,
D. Montana,
Great Falls Division.

Dec. 19, 1977.

Philip Roy, Browning, Mont., for plaintiff.

Seldon S. Frisbee, Frisbee, Moore & Epstein, Cut Bank, Mont., for defendants.

---

## OPINION AND ORDER

RUSSELL E. SMITH, District Judge.

The Blackfeet Tribe of the Blackfeet Indian Reservation, plaintiff, made a loan to defendants, and thereafter, when the loan was unpaid, obtained a judgment in tribal court for $46,773.28. Pursuant to this judgment, collateral located within the jurisdiction of the tribal court was sold and the proceeds of the sale applied to the judgment. A balance of $17,171.55 remains, and plaintiff prays for judgment in this court for that amount. Plaintiff proposes to execute on the off-reservation property of defendants and states that a federal judgment is necessary because a state court will not recognize a tribal court judgment.[1]

Defendants move to dismiss for want of jurisdiction.

There is no diversity jurisdiction under 28 U.S.C. § 1332 (1966). *Enterprise Electric Co. v. Blackfeet Tribe of Indians,* 353 F.Supp. 991 (D.Mont.1973).

There is no federal question jurisdiction under 28 U.S.C. § 1331 (1966) because the case does not "[arise] under the Constitution, laws, or treaties of the United States." It has been uniformly held that a case arises under the laws of the United States only if a right created by federal law is an essential element of plaintiff's case. *Gully v. First National Bank,* 299 U.S. 109, 112, 57 S.Ct. 96, 81 L.Ed. 70 (1936); *California v. General Motors Corp.,* 431 F.2d 732, 733 (9th Cir. 1970). As a general rule, actions involving title to property do not present federal questions simply because one of the parties derived title from the United States. *Shulthis v. McDougal,* 225 U.S. 561, 32 S.Ct. 704, 56 L.Ed. 1205 (1912). However, an exception is made in the case of some Indian lands. In *Oneida Indian Nation v. County of Oneida,* 414 U.S. 661, 667, 94 S.Ct. 772, 777, 39 L.Ed.2d 73 (1974), the Supreme Court held that "[g]iven the nature and source of the possessory rights of Indian tribes to their aboriginal lands, particularly

when confirmed by treaty, it is plain that the complaint asserted a controversy arising under the Constitution, laws, or treaties of the United States within the meaning of both § 1331 and § 1362."

Here, however, we deal neither with Indian lands nor with federally-derived property rights. Plaintiff's rights stem from a contract, and the fact that the authority to make a contract is found in federal statutes (25 U.S.C. §§ 476–77 (1963)) does not make an action to enforce the contract one arising under a federal statute. *Mescalero Apache Tribe v. Martinez,* 519 F.2d 479 (10th Cir. 1975); *Littell v. Nakai,* 344 F.2d 486 (9th Cir. 1965).

Plaintiffs urge that jurisdiction may be found under 28 U.S.C. § 1362 (1976) which provides that "[t]he district courts shall have original jurisdiction of all civil actions, brought by any Indian tribe or band with a governing body duly recognized by the Secretary of the Interior, wherein the matter in controversy <u>arises under the Constitution, laws, or treaties of the United States</u>" (emphasis supplied). The underscored language is identical with that appearing in 28 U.S.C. § 1331 (1966), but plaintiff contends that Congress intended 28 U.S.C. § 1362 to confer upon the United States district courts the same jurisdiction in actions brought by a tribe as it has in actions brought by the United States as trustees for the tribe, even if those actions do not meet the federal question requirements established in section 1331. In the *Oneida* case, the Supreme Court recognized the problem but did not decide it.[2]

In *Salt River Pima-Maricopa Indian Community v. Arizona Sand & Rock Co.,* 353 F.Supp. 1098, 1100 (D.Ariz.1972), the court upheld the plaintiff's position, saying:

Reading these sections (25 U.S.C. § 175, 28 U.S.C. §§ 1331 and 1362) together it is apparent that this court has under § 1362 a statutory grant of jurisdiction in this

---

1. This problem has not yet been decided. *Enterprise Electric Co. v. Blackfeet Tribe of Indians,* 353 F.Supp. 991, 992 n. 3 (D.Mont.1973).

2. *Oneida Indian Nation v. County of Oneida,* 414 U.S. 661, 682 n. 16, 94 S.Ct. 772, 39 L.Ed.2d 73 (1974).

matter. Under § 1362 any case which might have been brought by the United States is deemed to be one arising under the Constitution, laws or treaties of the United States if it is brought on behalf of an Indian tribe by their own attorneys. The opinion was based in part upon Judge Lumbard's dissent in *Oneida Indian Nation v. County of Oneida,* 464 F.2d 916, 924 (2d Cir. 1972), *rev'd,* 414 U.S. 661, 94 S.Ct. 772, 39 L.Ed.2d 73 (1974).

In the case of *Mescalero Apache Tribe v. Martinez,* 519 F.2d 479, 483 (10th Cir. 1975), the Court of Appeals for the Tenth Circuit refused to follow the rule stated in *Salt River.*

The legislative history of 28 U.S.C. § 1362 does not in my opinion alter the clear and unequivocal language[3] of section 1362 requiring that the action arise under federal law.

The purpose of S. 1356, 89th Cong., 2d Sess. (codified at 28 U.S.C. § 1362), as stated in both the House and Senate committee reports, was to remove the $10,000 jurisdictional amount in "all civil actions brought by Indian tribes or bands wherein the matter in controversy *arises under the Constitution, laws, or treaties of the United States*" (emphasis supplied).[4] The emphasized words had been judicially defined in cases involving section 1331, and the judicial definitions did not encompass all of the kinds of suits which could be filed by the United States on behalf of a tribe. Congress was advised by the Department of the Interior, the Department of Justice, and the Administrative Office of the United States Courts that the purpose of the bill was to remove from "federal question" jurisdiction the $10,000 jurisdictional amount in civil actions brought by Indian tribes or bands. The language of H.R.Rep.2040 which refers to the capacity of the United States Attorney to represent tribes and allotted Indians is in my opinion equivocal and does not warrant the inference that Congress intend-

ed to extend the jurisdiction of the district court to all actions by tribes. The language of H.R.Rep.2040 which is in question is:

The committee feels that there is another factor which is relevant in this situation and serves to emphasize the justification for enactment of this bill. The United States as trustee can initiate litigation involving issues identical to those which would be presented in cases brought under the new section. The enactment of this bill would provide the U.S. district court jurisdiction in those cases where the U.S. attorney declines to bring an action and the tribe elects to bring the action. As is observed in the Department of the Interior report, the tribes would then have access to the Federal courts through their own attorneys. It can therefore be seen that the bill provides the means whereby the tribes are assured of the same judicial determination whether the action is brought in their behalf by the Government or by their own attorneys. *There is a large body of Federal law which states the relationship, obligations and duties which exists between the United States and the Indian tribes. The Federal forum is therefore appropriate for litigation involving such issues.*

*Reprinted in* U.S.Code Cong. & Admin. News 1966, pp. 3145, 3147 (emphasis supplied).

If the quoted paragraph suggests the broad construction of section 1362 urged by plaintiff, which appears doubtful in view of the emphasized language, the next following paragraph in the house report contains a counter-suggestion:

This bill would therefore authorize the addition *of only those cases,* which the Justice Department stated would probably not be large in number, where the tribes have not been able to show that the amount in controversy exceeds $10,-000, and the Government for some reason

---

**3.** "Of course legislative history cannot overrule the clear and unequivocal language of a statute." *Mescalero Apache Tribe v. Martinez,* 519 F.2d 479, 482 (10th Cir. 1975).

**4.** H.R.Rep.No.2040, 89th Cong., 2d Sess.; S.Rep.No.1507, 89th Cong., 2d Sess., U.S.Code Cong. & Admin.News 1966, pp. 3145, 3146.

does not want to prosecute the case in behalf of the tribe. The Judicial Conference in commenting on this type of case has stated that the jurisdiction contemplated by the bill would present no difficulty of judicial administration.

*Id.* (emphasis supplied).

Under 25 U.S.C. § 175 (1963) the Attorney General is given authority to represent Indians in "all suits at law and in equity." Since the district courts have jurisdiction of suits brought by the United States Attorney, a purpose to give the courts jurisdiction as to all suits brought by tribes would hardly be compatible with the retention of the federal question language appearing in 28 U.S.C. § 1362. It is unlikely that, if it was a purpose of the new statute to expand jurisdiction theretofore granted by section 1331, other than by eliminating the requirement of a jurisdictional amount, Congress would have used the exact language of section 1331. With section 1331 before it, why would Congress use its language to express something different? The legislative history does not in my opinion warrant a conclusion that the words "aris[ing] under the Constitution, laws, or treaties of the United States" in section 1362 have a different meaning than those same words appearing in section 1331, and I follow the ruling in *Mescalero Apache Tribe v. Martinez*, 519 F.2d 479, 483 (10th Cir. 1975).

The court does not have jurisdiction under 28 U.S.C. § 1362.

Let judgment be entered dismissing the action for want of jurisdiction.