499 F.Supp. 1317 (1980)
Esther Lee BEGAY, surviving wife of John Lee, deceased, Individually and in her representative capacity for and on behalf of the surviving children and parent or parents of the deceased; Harvey Lee Begay and his wife, Mamie Begay; Herbert N. Begay and his wife, Ella Begay; Hosteen Alsissze Begay and his wife, Jane Doe Begay; John N. Begay and his wife, Mable Lee Begay; Kee H. Begay and his wife, Elise Begay; Roy Bekis and his wife, Annabella Bekis; Bernard D. Benally and his wife, Jeanette Benally; Billy Benally and his wife, Lucille Benally; Dan T. Benally and his wife, Jane Doe Benally; Harry Lee Benally and his wife, Minnie Benally; Henry J. Benally and his wife, Nancy Benally; John Benally and his wife, Nellie G. Benally; Lucy W. Benally, surviving wife of Roy Benally, deceased, Individually and in her representative capacity for and on behalf of the surviving children and parent or parents of the deceased; Nellie Benally, surviving wife of Harrison Benally, deceased, Individually and in her representative capacity for and on behalf of the surviving children and parent or parents of the deceased; Rose T. Benally, surviving wife of Todacheene Benally, deceased, Individually and in her representative capacity for and on behalf of the surviving children and parent or parents of the deceased; Bruce Billy and his wife, Elizabeth Billy; Thomas Blackhorse, Sr. and his wife, Grace Blackhorse; Alice Blackwater, surviving wife of Frank Blackwater, deceased, Individually and in her representative capacity for and on behalf of the surviving children and parent or parents of the deceased; Ruth Charley, surviving wife of Joe Charley, deceased, Individually and in her representative capacity for and on behalf of the surviving children and parent or parents of the deceased; George Tangle Chee and his wife, Jane Doe Chee; Asa Cody and his wife, Jennie Cody; Lucy Coleman, surviving wife of Joe Coleman, deceased, Individually and in her representative capacity for and on behalf of the surviving children and parent or parents of the deceased; Lucy Coty, surviving wife of Lee C. Coty, deceased, Individually and in her representative capacity for and on behalf of the surviving children and parent or parents of the deceased; Fannie Dick, surviving wife of Clark Dick, deceased, Individually and in her representative capacity for and on behalf of the surviving children and parent or parents of the deceased; Clarence Frank and his wife, Minnie Frank; Agatha Garnenez, surviving wife of Jim Tom Garnenez, deceased, Individually and in her representative capacity for and on behalf of the surviving children and parent or parents of the deceased; James N. Garnenez, aka James Jim, and his wife, Jane Doe Garnenez; Bessie George, surviving wife of King George, deceased, Individually and in her representative capacity for and on behalf of the surviving children and parent or parents of the deceased; Jessie Harrison, surviving wife of Phillip Harrison, deceased, Individually and in her representative capacity for and on behalf of the surviving children and parent or parents of the deceased; Manson Harvey and his wife, Mary Louise Harvey; Fern Hosteen, surviving wife of Harry Hosteen, deceased, Individually and in her representative capacity for and on behalf of the surviving children and parent or parents of the deceased; Ray Hosteen and his wife, Lula Hosteen; Fred Jim and his wife, Rita Rose Jim; Grey Jim and his wife, Lena Jim; Marie Joe, surviving wife of Dee Joe, deceased, Individually and in her representative capacity for and on behalf of the surviving children and parent or parents of the deceased; Raymond S. Joe and his wife, Dorothy Mae Joe; Mae N. John, surviving wife of Tom W. John, deceased, Individually and in her representative capacity for and on behalf of the surviving children and parent or parents of the deceased; Frank John and his wife, Evelyn John; Harry W. Johnson and his wife, Jane Doe Johnson; Mary Jane Johnson, surviving wife of Fred E. Johnson, deceased, Individually and in her representative capacity for and on behalf of the surviving children and parent or parents of the deceased; Mary Louise Johnson, surviving wife of Billy Johnson, deceased, Individually and in her representative capacity *1318 for and on behalf of the surviving children and parent or parents of the deceased; Roscoe Kinsel and his wife, Elizabeth Kinsel; Allen Lee and his wife, Lilly Lee; Tom A. Lee, Sr. and his wife, Alice S. Lee; Wilbert Mark and his wife, Jane Doe Mark; Sam Marshall, Sr. and his wife, Jane Doe Marshall; Frank Nacheenebetah and his wife, Jane Doe Nacheenebetah; Bernard Nakai and his wife, Louise Nakai; Joe Lee Nakai and his wife, Jane Doe Nakai; Leroy L. Nakai and his wife, Esther Mae Nakai; Pearl Nakai, surviving wife of John Smith Nakai, deceased, Individually and in her representative capacity for and on behalf of the surviving children and parent or parents of the deceased; Paul Nakaidinae and his wife, Louise Nakaidinae; Annie Mae Nelson, surviving wife of Alfred Nelson, deceased, Individually and in her representative capacity for and on behalf of the surviving children and parent or parents of the deceased; Kenneth Nez and his wife, Jane Doe Nez; Louis K. Nez and his wife, Jane Doe Nez; Mary Jane Nez, surviving wife of Keedah Hosteen Nez, aka Keedah Hosteen Nez Begay, Individually and in her representative capacity for and on behalf of the surviving children and parent or parents of the deceased; Donald Roe and his wife, Corena Roe; Harry Russell and his wife, Jane Doe Russell; Harry Smith, Jr. and his wife, Jane Doe Smith; James Smith and his wife, Jane Doe Smith; Bessie Sorrelhorse, surviving wife of Tony Sorrelhorse, Jr., deceased, Individually and in her representative capacity for and on behalf of the surviving children and parent or parents of the deceased; Elsie J. Tapaha, surviving wife of John Tapaha, deceased, Individually and in her representative capacity for and on behalf of the surviving children and parent or parents of the deceased; Joe Tom Tapaha and his wife, Susie Tapaha; Carl Thomas and his wife, Alberta Thomas; Frank Tsosie and his wife, Lola Tsosie; George Tutt, Sr. and his wife, Bessie H. Tutt; King Tutt and his wife, Jane Doe Tutt; Jane Washburn, surviving wife of John Washburn, deceased, Individually and in her representative capacity for and on behalf of the surviving children and parent or parents of the deceased; Betty Joe Yazzie, surviving wife of Kee Yazzie, deceased, Individually and in her representative capacity for and on behalf of the surviving children and parent or parents of the deceased; Betty Joe Yazzie, surviving wife of Robert Yazzie, deceased, individually and in her representative capacity for and on behalf of the surviving children and parent or parents of the deceased; Delores Yazzie, surviving wife of Peter Fred Yazzie, deceased, Individually and in her representative capacity for and on behalf of the surviving children and parent or parents of the deceased; Fannie Yazzie, surviving wife of Clifford Yazzie, deceased, Individually and in her representative capacity for and on behalf of the surviving children and parent or parents of the deceased; Hanagran Yazzie and his wife, Amy Yazzie; James H. Yazzie and his wife, Jane Doe Yazzie; Kelewood Yazzie and his wife, Stella Mae Yazzie; Mary Ann Yazzie, surviving wife of Selow Yazzie, deceased, Individually and in her representative capacity for and on behalf of the surviving children and parent or parents of the deceased, Plaintiffs,
v.
The KERR-McGEE CORPORATION; Kerr McGee Oil Industries, Inc.; Vanadium Corporation of America; Foote Mineral Co.; Amax, Inc.; Climax Uranium Company; and Climax Molybdenum Company, Defendants.
No. Civ. 79-1016 Phx. WPC.
United States District Court, D. Arizona.
October 1, 1980.
*1319 William P. Mahoney, Jr. and Frank J. Barry, Tucson, Ariz., of Mahoney & Rood, *1320 Stewart L. Udall, Phoenix, Ariz., for plaintiffs.
Steven C. Lester, of Jennings, Strouss & Salmon, Ralph Mahowald, of O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, et al., Robert K. Park, John R. Greer, Phoenix, Ariz., for defendants Kerr-McGee Corp. and Kerr-McGee Oil Industries, Inc.
Newman R. Porter, Alvin H. Shrago, of Evans, Kitchel & Jenckes, Phoenix, Ariz., for Amax, Inc., Climax Uranium Co. and Climax Molybdenum Co.
Douglas L. Irish, of Lewis & Roca, Phoenix, Ariz., for Foote Mineral Co. and Vanadium Corp. of America.
James P. Linn, Raymond E. Tompkins, William R. Burkett, B. J. Zimmerman, Richard F. Campbell, Oklahoma City, Okl., for Kerr-McGee Corp.
Rosemary Collyer, Raymond J. Turner, of Dawson, Nagel, Sherman & Howard, Denver, Colo., for Foote Mineral Co. and its related parties defendant.

MEMORANDUM AND ORDER
COPPLE, District Judge.
In their fourth amended complaint, plaintiffs seek to invoke this court's jurisdiction on the basis of both diversity of citizenship and federal question. Between 1948 and 1966, plaintiffs, and plaintiffs' decedents, all Navajo Indians, were employed at the defendants' uranium mining operations located on the Navajo Indian Reservation. During this time period, these uranium workers are alleged to have been exposed to radon and "radon daughter" products. This exposure is alleged to have caused the plaintiffs and plaintiffs' decedents to suffer lung cancer and other radiation-related illnesses. Plaintiffs seek damages under the theories of negligence, strict liability, and intentional tort.
Defendants have moved to dismiss this complaint on the basis that this court lacks subject matter jurisdiction and the complaint fails to state a claim.
In their memoranda, the parties have raised issues regarding the existence of a federal question, the applicability of Arizona's Occupational Disease Disability Act (ODDA) and Workmen's Compensation Laws to Indian reservations, and several exceptions to the exclusive remedies afforded under these two statutory schemes.
As will become evident, this Court is being called upon to interpret the language and underlying policy of ODDA. Although this Court is of the opinion that the state courts of Arizona are better equipped to determine these issues, this Court may not dismiss this case under the abstention doctrine.
Since a constitutional issue is not present, the doctrine of Railroad Comm'n v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), is not applicable. Rather, the line of cases beginning with Burford v. Sun Oil Co., 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), must be considered. In Burford -type abstention, the court defers jurisdiction because of the intensely local nature of the state's regulatory interest in a certain matter and the potential for disruption that would be entailed by federal intervention. See Construction Aggregates Corp. v. Rivera de Vicenty, 573 F.2d 86, 90 (1st Cir. 1978). Some cases may involve issues of such local concern that any federal intrusion may have an unsettling impact on local law, especially where the exercise of federal review might be disruptive of local efforts to establish a coherent policy with respect to matters of substantial public concern. See Colorado River Conservation Dist. v. United States, 424 U.S. 800, 814, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976); Louisiana Power & Light Co. v. Thibodaux, 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959).
Nevertheless, in this case this Court must determine the applicability of the abstention doctrine in light of the grant of diversity jurisdiction. A court may not abstain merely because the applicable state law is uncertain or difficult to determine. Meredith v. Winter Haven, 320 U.S. 228, 236, 64 S.Ct. 7, 11, 88 L.Ed. 9 (1943).
The Ninth Circuit has been careful to avoid extending Burford. See International Brotherhood of Electrical Workers v. *1321 Public Service Comm'n, 614 F.2d 206, 211 (9th Cir. 1980). The IBEW court observed that Burford -type abstention is particularly inappropriate when the basis of plaintiff's claim is preemption. Id. at 212 n.1. Although federal preemption is not specifically involved in this case, the issue of whether the application of Arizona's workmen's disability laws infringes upon Indian sovereignty is a matter of federal concern. The very presence of this issue indicates that this dispute is not wholly a local matter.
Secondly, the Ninth Circuit explained that Burford -type abstention is inappropriate in cases in which federal issues can easily be separated from state law issues. Id. at 211. In this case, the issue of whether ODDA may be applied upon an Indian reservation may be easily separated from the state law issues of whether the exceptions to ODDA's otherwise exclusive remedy are applicable. Finally, the IBEW court indicated that this type of abstention is inappropriate where the state has not limited the determination of the issue to a particular court. Id. Thus, abstention might be appropriate where challenges to a state regulatory commission orders are concentrated in a specialized court. No particular court is deemed especially competent to construe the substantive provisions of the Workmen's Compensation Law or ODDA.
In the only case this Court could find that fully confronted the Burford doctrine in the context of interpreting and applying local workmen's compensation laws, the First Circuit held the doctrine inapplicable to issues regarding the extent of the act's coverage. Construction Aggregates Corp. v. Rivera de Vicenty, 573 F.2d 86, 93-96 (1st Cir. 1978). In that case, the court held that abstention was appropriate with regard to a challenge to the setting of insurance rates, which Puerto Rico had confined to a particular court. As in Construction Aggregates, the fact that this Court is being called upon to determine the scope of coverage under the workmen's disability laws is no reason for this Court to decline jurisdiction.

Federal Question Jurisdiction
Plaintiffs argue that this Court has jurisdiction under 28 U.S.C. § 1331. First, under the authority of Oneida Indian Nation v. County of Oneida, 414 U.S. 661, 94 S.Ct. 772, 39 L.Ed.2d 73 (1974), it is claimed that plaintiffs' causes of action in tort "arise under" the Navajo Treaty, the Arizona Enabling Act, and the Indian Commerce Clause. Second, plaintiffs rely on Williams v. Lee, 358 U.S. 217, 79 S.Ct. 269, 3 L.Ed.2d 251 (1959), for the proposition that the application of workmen's compensation laws to Indians for disabilities suffered in employment on the Navajo Reservation constitutes an infringement upon Indian sovereignty.
In Oneida, the Oneida tribe maintained what was essentially a possessory action, asserting a current right to possession conferred by federal law. 414 U.S. at 666, 94 S.Ct. at 776. The Supreme Court held that a federal question was presented because of the "nature and source of the possessory rights of Indian tribes to their aboriginal lands, particularly when confirmed by treaty." Id. at 667, 94 S.Ct. at 777. The Court explained that tribal rights to aboriginal lands are protected by treaties, federal statutes, and the doctrine of Indian title. Title to a tribe's aboriginal land cannot be lost without the consent of the federal government. Thus, a dispute over the validity of an Indian cession of land to the state of New York in 1795 without the consent of the federal government raised a federal issue.
The rationale of Oneida has been extended to include actions brought by Indian tribes for trespass, Mescalero Apache Tribe v. Burgett Floral Co., 503 F.2d 336, 338 (10th Cir. 1974), and to actions brought by Indian tribes for damage to tribal lands. Pueblo of Isleta v. Universal Constructors, Inc., 570 F.2d 300, 302 (10th Cir. 1978). See Fort Mojave Tribe v. Lafollette, 478 F.2d 1016, 1018 (9th Cir. 1973) (Indian tribe can sue under 28 U.S.C. § 1362 to protect federally protected property rights). The common thread of these cases is an action by an Indian tribe to protect the tribe's possessory rights in tribal lands.
*1322 In contrast, the plaintiffs in this case bring their action as individuals seeking damages for personal injury. The only link to the Oneida rationale is that the allegedly tortious conduct occurred on an Indian reservation. The tribe's possessory rights are in no way involved. Where tribal possessory rights are not involved, the courts have refused to extend the rationale of Oneida to hold that a federal question is present. See Gila River Indian Community v. Henningdon, Durham & Richardson, 626 F.2d 708 (9th Cir. 1980) (Indian tribe's cause of action in contract and tort arising out of a transaction occurring on reservation does not arise under federal law); Mescalero Apache Tribe v. Martinez, 519 F.2d 479, 481 (10th Cir. 1975) (Indian tribe's action for breach of contract does not arise under federal law); Blackfeet Tribe v. Wippert, 442 F.Supp. 65, 66 (D.Mont.1977) (same). Accordingly, this Court will not extend the rationale of Oneida to hold that a personal injury tort action brought by individual Indians arises under federal law.
Plaintiffs' contention that the test espoused in Williams v. Lee operates to vest this Court with jurisdiction to determine the merits of a tort action is more difficult to unwind. Plaintiffs' argument is that the Williams test precludes Arizona from applying its workmen's compensation laws to employment-related disabilities suffered by Indians arising out of their employment on the reservation. Just how this reasoning leads to the conclusion that this Court has jurisdiction to determine the merits of a tort action is never explained. The Court, however, will not hazard a guess for it is clear that the plaintiffs' claim does not arise under federal law.
A case "arises under" federal law only if a right created by federal law is an essential element of the cause of action. Phillips Petroleum Co. v. Texaco, Inc., 415 U.S. 125, 127, 94 S.Ct. 1002, 1003, 39 L.Ed.2d 209 (1974); Gully v. First Nat'l Bank, 299 U.S. 109, 112, 57 S.Ct. 96, 97, 81 L.Ed. 70 (1936). The federal question must be raised in the statement of the plaintiff's cause of action. A plaintiff cannot anticipate or reply to a probable defense in order to have his cause of action arise under federal law. Plaintiff's invocation of the Williams test is simply an anticipation of a defense. The anticipated defense is that Arizona has limited the type of remedies that may be obtained for employment-related disabilities. Plaintiffs argue in response that the application of workmen's compensation laws would constitute an infringement upon Indian sovereignty. Whether or not workmen's compensation laws can be applied on Indian reservations might present a federal question, but this issue is relevant only to the determination of the validity of the defendant's argument that exclusive jurisdiction for these sorts of work-related claims rests with the Arizona Industrial Commission. Nowhere is it explained how the Williams test mandates the recognition of a federal cause of action in tort for Indian plaintiffs.
Moreover, plaintiffs' argument misapplies the infringement test espoused in Williams and its progeny. The cases relied upon by plaintiffs, Williams v. Lee, supra, McClanahan v. State Tax Comm'n, 411 U.S. 164, 93 S.Ct. 1257, 36 L.Ed.2d 129 (1973), and Metlakatla v. Egan, 369 U.S. 45, 82 S.Ct. 552, 7 L.Ed.2d 562 (1965), all involved instances where state law was being applied against (not to or by) Indians arising out of reservation activities. In Williams, a non-Indian sought to apply state contract law against an Indian debtor for a transaction that took place on the reservation. In Metlakatla, Alaska sought to apply its fishing regulations against Indians who fished on the reservation. In McClanahan, Arizona sought to apply its income tax laws against an Indian for income earned on the reservation. In each case, state law would infringe upon the right of the Indian tribe to regulate the activities of its members.
Thus, the Williams test might apply in a suit by an employee seeking to apply state workmen's compensation laws against an Indian employer for injuries that arise out of employment on the reservation. In contrast, as to the plaintiffs in this case, state law operates merely to limit the remedies available under state law. The plaintiffs are seeking the benefit of state tort *1323 law, but Arizona restricts the availability of tort remedies where the plaintiff-employee suffers an employment-related injury or disability. This is the substance of plaintiffs' argument. They seek the benefit of state tort law, but do not want to be subject to the limitations imposed by workmen's compensation laws. There is no infringement upon the authority of an Indian tribe to govern Indian affairs where an Indian plaintiff opts for the protection of state law because he cannot obtain the relief he desires within his tribe's institutions.[1]See Williams v. Lee, 358 U.S. at 220, 79 S.Ct. at 270 (recognizing suits by Indians against outsiders in state courts). There can be no infringement merely because the law under which the Indian seeks a benefit will not afford him the remedy he may desire.
Finally, and perhaps most importantly, there is a federal statute, 40 U.S.C. § 290, that permits states to apply their workmen's compensation laws upon Indian reservations. Johnson v. Kerr-McGee Oil Industries, Inc., CIV-79-331-TUC-MAR (D.Ariz. 1980). Judge Richey's orders of August 21 and May 19, 1980 adequately dispose of this issue.

Diversity Jurisdiction
As explained in its memorandum and order of May 13, 1980, this Court lacks subject matter jurisdiction to hear the plaintiffs' claims if an Arizona court would be deprived of subject matter jurisdiction. With certain exceptions discussed below, Arizona's workmen's disability laws operate to deprive its courts of jurisdiction to adjudicate claims covered by the applicable statutory scheme. If the plaintiffs are unable to fit themselves within the statutory exceptions, their sole remedy lies before the Arizona Industrial Commission.
From 1943 until 1973, there existed the Workmen's Compensation Law, Ariz.Rev. Stat.Ann. §§ 23-901 through -1091, and the separate and distinct Occupational Disease Disability Act, §§ 23-1101 through -1270. In 1973, these two statutory schemes were merged. Ariz.Rev.Stat.Ann. §§ 23-901 through -1081 (Supp.1979). Coverage under these acts was exclusive. If a claimant's disability was compensable under ODDA, he was excluded from coverage under the Workmen's Compensation Law. Featherman v. Industrial Comm'n, 112 Ariz. 52, 537 P.2d 922, 924 (1974).
These two statutory systems were distinguishable regarding several issues involved in this lawsuit:
(1) whereas the Workmen's Compensation Law contained a wilful misconduct exception to the act's exclusive remedy, § 23-1022, the only exception under ODDA was where the employee successfully rejected that act's provisions, § 23-1222;
(2) whereas the Workmen's Compensation Law required notices to be published in all languages spoken by the employees, § 23-906(E), ODDA required notices to be published only in those languages, including English, designated by the Industrial Commission, § 23-1108;
(3) under the Workmen's Compensation Law, only the employee, and not his dependents, could make the election under § 23-906(E) if the employee were injured during the period in which proper notice had not been effected, Jackson v. Northland Construction Co., 111 Ariz. 387, 531 P.2d 144, 147 (1975); under ODDA, the employee's dependents could make the election if the illness resulted in death and if the employee had not exercised his option prior to death, § 23-1223(D).
To complicate things further, ODDA was amended in 1969 to include within its coverage of radiation illness, diseases and "pathological changes" arising out of exposure to "ionizing radiation". § 23-1102(12) (1971). Prior to 1969, this section covered "ulceration of the skin or destruction of tissue due to the prolonged exposure to roentgen rays or radium emanations."
*1324 Finally, in 1973, the two statutory systems were combined. Occupational diseases are now subject to the notice and election provisions that formerly applied only to the Workmen's Compensation Law. Nevertheless, the willful misconduct exception is not applicable to occupational diseases. § 23-901(9)(b).
Plaintiffs contend that there is no coverage under ODDA because the kind of radiation illness suffered by the plaintiffs and plaintiffs' decedents was not recognized as an occupational disease until 1969. The plaintiffs and plaintiffs' decedents were exposed to "radiation from radon and radon products" during a period (1948-66) when only "exposure to roentgen rays or radium emanations" was explicitly covered. The plaintiffs interpret the 1969 amendment as indicating a significant change in substantive legal rights. Since Arizona forbids the retroactive application of statutes unless the legislature expressly declares to the contrary and since the rights of workers are fixed by the laws in existence at the time when they perform their actual work, the plaintiffs are not covered by ODDA as it stood between 1948 and 1966.
In contending that ODDA does cover the plaintiffs' alleged disabilities, the defendants differ sharply in their reasoning.
Kerr-McGee argues that the crucial time in determining whether there is coverage is not the time of exposure, but the time of disablement or death. The critical time is the date the claimant, in the exercise of reasonable diligence, discovers a relationship between a disabling condition and employment. Since the plaintiffs have pled only the dates of exposure and not the dates of disablement or death, there are no pleaded facts that would indicate that ODDA does not apply.
Defendant Foote Mineral would have this Court take judicial notice of the fact that "radium emanations" is a commonly understood term that encompasses "radon gas and radon daughters". Thus, Foote Mineral argues, the 1969 amendment was not necessary in order to bring the diseases of which plaintiffs complain within the substantive coverage of ODDA. In addition to the scientific literature quoted by Foote, it is to be noted that the literature submitted by the plaintiffs also supports this conclusion. "Uranium ores contain uranium plus all the other members of the radioactive family, of which uranium is the parent. Included in this list is radium, which is transformed into radon gas." Federal Security Agency, Health Study of the Uranium Mines and Mills 5 (Interim Rep.1952).
A reading of State Compensation Fund v. Joe, 25 Ariz.App. 361, 543 P.2d 790 (1975), and State Compensation Fund v. Yazzie, 25 Ariz.App. 89, 541 P.2d 415 (1975), reveals that, at the very least, either Kerr-McGee or Foote Mineral must be correct. Both could be correct as their arguments are not mutually exclusive. Kerr-McGee's argument is necessary in explaining Yazzie and Joe only if Foote Mineral is wrong.
In both Yazzie and Joe, the claimants were exposed to radiation emanating from uranium mines in which they worked. All exposure in Arizona was prior to 1969. In each case, there is a statement to the effect that ODDA must be applied as its provisions read at the time of death or disablement. Joe, 543 P.2d at 791 n.3; Yazzie, 541 P.2d at 417. Although in each case, the court concluded that the claimant was not entitled to collect an award, it was not on the ground that there was no coverage under ODDA. In fact, ODDA was held to apply as opposed to the Workmen's Compensation Law even though the exposure occurred prior to 1969 and a disease could be compensable under the Workmen's Compensation Law so long as a required condition of ODDA was not met. Yazzie, 541 P.2d at 417-418; Joe, 543 P.2d at 793.
Defendant Foote Mineral argues that the date of disablement/death language in Yazzie and Joe relate only to the question of when a claim must be filed, but not to the substantive question of which diseases are covered. If Foote Mineral is correct, then Yazzie and Joe must have held that the uranium miners were covered by ODDA only because pre-1969 ODDA covered the exposure to radiation in uranium mines. If there was no ODDA coverage, then the *1325 courts in Yazzie and Joe explained that the Workmen's Compensation Law would have applied instead.
At this point, it is not necessary for this Court to determine which theory is correct. It suffices that Yazzie and Joe mandate that at least one is correct, either of which leads to the conclusion that the plaintiffs in this case are subject to the provisions of ODDA and not the Workmen's Compensation Law or state tort law.[2]
Finally, this Court will observe that the mere fact of an amendment itself does not indicate that the legislature intended to change a law or merely to interpret it. While an amendment to an unambiguous statute indicates an intention to change the law, no such intention is indicated where an ambiguous provision has been amended. 1A Sutherland, Statutory Interpretation § 22.30 (4th ed. 1972). Considering the scientific literature alluded to earlier indicating that radon gas and its decay products are encompassed by the term "radium emanations", it certainly cannot be said that the statute's pre-1969 language was unambiguous. Furthermore, workmen's compensation laws are to be interpreted liberally. Sutherland, supra at § 71.06. These statutes should be construed in a manner which will best effect the purpose of seeing that the disabled worker is reasonably compensated. Ossic v. Verde Central Mines, 46 Ariz. 176, 49 P.2d 396, 401 (1935). To adopt the construction suggested by plaintiffs would do violence to the rules of statutory interpretation, if not the laws of science.
As this Court has concluded that the plaintiffs' claims are covered by ODDA, the remaining issues may be disposed of without extensive discussion. As explained above, there is no wilful misconduct exception under ODDA as it existed until 1973, or thereafter as incorporated in the Workmen's Compensation Law. ODDA provided the exclusive remedy except where the employee, or his dependents if death occurred, rejects the provisions. Ariz.Rev.Stat.Ann. § 23-1222, -1223 (1971); § 23-901(9)(b) (Supp.1979).
As for the defendants' alleged failure to comply with statutory notice requirements, the plaintiffs' complaint is deficient in that it alleges a failure to comply with the Workmen's Compensation Law rather than ODDA. Fourth Amended Complaint ¶ V. As indicated above, the plaintiffs are covered by ODDA and not the Workmen's Compensation Law. Thus, any tort action based upon a right to reject ODDA's provisions must allege a failure to comply with that act's notice requirements. The requirements of the Workmen's Compensation Law are irrelevant.
IT IS HEREBY ORDERED:
The complaint is dismissed, except that leave is granted to plaintiffs to file a Fifth Amended Complaint alleging only a failure to comply with the notice requirements of ODDA if appropriate.
NOTES
[1] The reasoning in Williams might lead to the conclusion that the Navajo tribe could develop its own workmen's compensation laws that could displace the Arizona system on the reservation. See Canby, Civil Jurisdiction and the Indian Reservation, 1973 Utah L.Rev. 206, 223-27. The tribe, however, has not seen fit to do so. See Navajo Tribal Code §§ 7-204(c); 7-252; 15-1 through -802 (1977).
[2] Even if plaintiffs are correct in contending that pre-1969 ODDA did not cover the diseases suffered by plaintiffs and plaintiffs' decedents, then they would be left not with a tort action, but with a claim under the Workmen's Compensation Law. Under Arizona law, a disease not covered by ODDA is apparently recognized as a compensable injury under the Workmen's Compensation Law. Compare Featherman v. Industrial Comm'n, 112 Ariz. 52, 537 P.2d 922, 923-24 (1975) with Marquez v. Industrial Comm'n, 110 Ariz. 273, 517 P.2d 1269, 1270-71 (1974).