761 P.2d 1081

Walter SHERMAN, Petitioner,

v.

The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,

Progressive Mechanical, Inc., Respondent Employer,

Eagle Star Insurance Company of America, c/o Gab Business Services, Respondent Carrier.

Walter SHERMAN, Petitioner Employee,

v.

The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,

Glendale Plumbing, Respondent Employer,

Eagle Star Insurance Company of America, c/o Gab Business Services, Respondent Carrier.

No. 1 CA–IC 3689.

Court of Appeals of Arizona, Division 1, Department D.

April 5, 1988.

Reconsideration Denied Oct. 7, 1988.

Ely, Bettini & Ulman, by Joseph M. Bettini, Phoenix, for petitioner employee.

Dennis P. Kavanaugh, Chief Counsel, Indus. Com'n of Arizona, Phoenix, for respondent.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears by J. Victor Stoffa, Phoenix, for respondents Employers and Carrier.

## OPINION

EUBANK, Judge.

This is a special action review of a consolidated Industrial Commission award which found, in part, that petitioner's claim of February 14, 1986 "for a rash which appeared on [petitioner's] lower abdomen" was untimely filed, depriving the commission of jurisdiction to decide the merits of the claim.

Petitioner ("Sherman") presents the following question for review:

Whether the claim filed February 14, 1986, for the claimant's osteomyelitis was filed within one year of the date upon which the said condition became manifest or within one year of the date when the claimant knew or in the exercise of reasonable diligence should have

known that the said condition was the result of a compensable injury.

Respondent raises an additional question: even if the claim herein were timely filed, would the Award denying jurisdiction have to be set aside where claimant failed to produce any competent and unequivocal medical evidence proving a causal relationship between his employment and the condition for which benefits are claimed?

We find that the first issue is dispositive of this case, and, consequently, do not reach the second issue. For the following reasons, we set aside the award.

## 1. FACTS AND PROCEDURAL BACKGROUND

The record indicates that on occasion Sherman has suffered from a recurring rash on his abdomen dating back at least to November 1975. The rash sporadically occurred years before Sherman became employed by the respondent employer, Progressive Mechanical, Inc.

In 1978, Sherman suffered a work-related low back injury while working for another employer who is not involved in this case. Sherman eventually underwent surgery in 1979 or 1980 for removal of a herniated disc at L4–5. He also testified that he had suffered from back pain during the two or three years prior to the 1978 injury.

In July 1982, Sherman was hired by respondent Progressive Mechanical, Inc. as a sheet metal worker. Apparently, the metal he worked with had some type of fish oil coating. To keep his hands clean, he would constantly wipe his hands "across [his] belly ... or down on [his] pants." This occurred on a daily basis.

On September 25, 1984, Sherman suffered another work-related low back injury when he caught the full weight of a piece of sheet metal weighing approximately 150 pounds. This injury was essentially a lumbosacral sprain located at L4–L5. During the following two days, Sherman suffered pain, developed a high fever, and became delirious, at which point he was taken to a hospital.

In the hospital, Sherman underwent several diagnostic tests, which resulted in a determination that the cause of his fever was septicemia (blood poisoning). Blood cultures revealed the presence of Staph Aureus Coagulase Positive. After several days in the hospital and antibiotic treatment, the septicemia was brought under control and his back improved enough for him to be released from the hospital.

During the following months, Sherman underwent a program of conservative treatment, including physical therapy, observation, and medications. Nevertheless, his back pain continued.

As a result, in May 1985, Sherman was hospitalized again, and underwent a lumbar myelogram and a CT scan. These tests revealed the existence of osteomyelitis, (an infectious bone inflammation), located at T12–L1, including abscesses in the infected area. The bacteria which caused the osteomyelitis was Staphylococcus Aureus, although no one ever administered tests to determine whether it was identical to the organism associated with the septicemia approximately six months earlier. The abscess was drained, and Sherman was placed on an extended course of antibiotic treatment, which will continue on a long-term basis.

In June 1985, group medical consultants confirmed that Sherman had an active staph osteomyelitis, but stated: "It is difficult to relate the vertebral osteomyelitis to the twisting injury to the back that occurred on September 25, 1984." Indeed, in July, 1985, the consultants confirmed that with "regard to the twisting injury of September 25, 1984, the patient's condition is stationary, and there is no permanent impairment related to that injury."

On February 14, 1986, Sherman filed a claim with the Industrial Commission of Arizona for "skin infection, staph infection, and other complications," alleging, in essence, a gradual injury which occurred "up to and including 9/24/84."

On February 21, 1986, by "Notice of Claim Status," the respondent insurance carrier denied Sherman's claim on the

grounds: (1) "No Medicolegal causation [sic]" and (2) "Claim Not Timely Filed." Subsequently, Sherman requested a hearing before the Industrial Commission.

At the time of the hearing, the spinal abscesses had resolved completely, but some irreparable bone damage existed. Sherman continued to suffer some pain and limitation of motion in his back, and there was a possibility that the osteomyelitis might reoccur without warning at any time.

On October 16, 1986, the administrative law judge found, as quoted above, that Sherman's February 21, 1986 claim was not timely filed, and that as a consequence, the Industrial Commission lacked jurisdiction to decide the merits of the claim.

## 2. MOTION TO DISMISS

■ On October 9, 1987, the respondents filed a motion to dismiss [1] Sherman's petition for special action, noting the omission of defendant Finishline Industries and its carrier Transportation Insurance Company from the caption of the special action, and arguing that they are "indispensable" parties within the meaning of *Associated Grocers v. Industrial Comm'n*, 126 Ariz. 412, 616 P.2d 87 (App.1980). This case is distinguishable from *Associated Grocers*, however. In that case, the parties stipulated that the unnamed parties in the petition for special action were, in fact, "indispensable." In contrast, in this case, both of the unnamed defendants had been dismissed by the administrative law judge himself prior to the hearing referred to above. The award from which Sherman petitions special action does not operate to dismiss the unnamed defendants, but rather merely takes notice that they had been dismissed earlier. The fact that the caption of the award continued to include the unnamed defendants as parties is perhaps more indicative of secretarial oversight than it is of "indispensability." The administrative law judge certainly did not consider them to be "indispensable." Finally, and in any event, even though we set aside the award, our decision will not cause the unnamed parties to be injected back into this action, again, because they were dismissed by the administrative law judge prior to the hearing and award. Accordingly, the respondents' motion to dismiss is denied.

## 3. TIMELINESS

Concerning the February 14, 1986 claim, the administrative law judge stated: "[s]ince the injury was ... a gradual injury allegedly occurring before September 24, 1984 it is on its face more than 1 year before filing." The judge went on to conclude that "[a]pplicant's claim was not timely filed and the undersigned is without jurisdiction to decide this case on the merits." Thus, the judge specifically did not reach the merits of the February 14, 1986 claim.

Sherman argues that his claim was timely filed because, at the very earliest, the one year limitation period commenced in May 1985 when he was first informed by doctors of the existence of the osteomyelitis. Sherman cites A.R.S. § 23–1061, which provides in part:

The time for filing a compensation claim begins to run when the injury becomes manifest or when the claimant *knows or in the exercise of reasonable diligence should know that he has sustained a compensable injury*.... neither the commission nor any court shall have jurisdiction to consider a claim which is not timely filed under this subsection....

A.R.S. § 23–1061(A) (emphasis added). The question is, then, whether Sherman knew or reasonably should have known that he had sustained a compensable injury related to the rash on his stomach. *See Mead v. American Smelting & Ref. Co.*, 1 Ariz.App. 73, 76, 399 P.2d 694, 697 (1965).

1. We note with strong disapproval that respondent's motion to dismiss was filed a scant five calendar days prior to oral arguments before this court. In reality, this period included a weekend, leaving only three working days for opposing counsel and the court to prepare. Indeed, petitioner was unable to respond in time, and did not file a response until four days after the oral arguments. [Motion Filed 10/9/87; Oral Arguments 10/14/87; Response filed 10/19/87; Reply filed 10/29/87].

■ A claimant is not expected to know the nature of the disability or its relationship to the employment before they are reasonably ascertainable by the medical profession. *Employers Mutual Liability Ins. Co. of Wisconsin v. Industrial Comm'n*, 24 Ariz.App. 427, 429, 539 P.2d 541, 543 (1975). In addition, it has long been the rule in Arizona that when an injury is

> slight or trivial at the time and noncompensable and later on develops unexpected results for which the employee could not have been expected to make a claim and receive compensation, then the statute runs, not from the date of the accident, but from the date the results of the injury became manifest and compensable.

*Hartford Accident & Indem. Co. v. Industrial Comm'n*, 43 Ariz. 50, 55–56, 29 P.2d 142, 147 (1934) (quoted in *Pacific Fruit Express v. Industrial Comm'n*, 153 Ariz. 210, 213–14, 735 P.2d 820, 823–24 (1987)). The record contains substantial evidence that Sherman initially considered his rash to be slight and trivial. This is further borne out by the very fact that he never reported the rash to his employer and did not file a compensation claim based upon the rash until after the discovery of the osteomyelitis. Most important, however, Sherman never knew he had osteomyelitis in his spine until it was diagnosed by doctors in May 1985, the second time he was hospitalized.

■ The recent *Pacific Fruit Express* case clarifies just when an injury becomes manifest and compensable for purposes of the one year filing period of A.R.S. § 23–1061. *Id.* at 213–14, 735 P.2d at 823–24. In that case, the claimant's work had exposed him to high noise levels. In the late 1970's, he became aware of a hearing loss, but never sought medical treatment. He never reported the problem until 1983, when he filed a worker's compensation claim. In 1984, his hearing was tested for the first time and was related by a doctor to his employment. Affirming that, indeed, the claim had been timely filed, the Arizona Supreme Court stated:

Under A.R.S. § 23–1061(A), the time for filing a workers' compensation claim begins to run when the injured employee perceives *(1) the nature and (2) seriousness of the injury and (3) recognizes the causal relationship between his injury and his employment....* These three factors are not necessarily of even weight but must be considered together in determining when the injury became manifest or when the claimant knew or should have known that he sustained a compensable injury.

For an injury to be serious and not slight or trivial, the symptoms must be of sufficient magnitude.... Awareness of the permanence of a condition is a factor when determining the magnitude of the injury.

\*    \*    \*    \*    \*    \*

In addition, the claimant must recognize that the injury he has sustained is causally connected to his employment. In other words that it is a compensable injury. *Id.* at 214, 735 P.2d at 824 (numbering and emphasis added; citations omitted). We are of the opinion that, prior to medical diagnosis, Sherman could not have perceived that the rash, (a relatively minor condition), was a compensable injury, nor that it might lead to septicemia, (a more serious condition), and ultimately lead to osteomyelitis and permanent residual bone damage, (very serious and permanent conditions), as he now alleges. If he did not know he had osteomyelitis, he could not have related it to his employment until after it was diagnosed. Accordingly, and in view of the *Pacific Fruit Express* case, it was error for the administrative law judge to have denied Sherman's claim on grounds of untimeliness.

We do not mean, however, that Sherman has proven the existence of such a causal linkage. We are aware that the administrative law judge specifically noted the testimony of various doctors, none of whom could state with reasonable medical probability that Sherman's employment led to the rash, much less from the rash to the septicemia to the osteomyelitis. Nevertheless, those findings were all made with

respect to Sherman's other claims dated September 24, 1984 and January 25, 1984. As the administrative law judge stated, he never reached the merits of the February 14, 1986 claim because he ruled that the commission lacked jurisdiction.

For the foregoing reasons, the award is set aside.

HAIRE, C.J., and FROEB, P.J., concur.